CHANDLER et al., Appellees,

v.

EMPIRE CHEMICAL, INC., Midwest Rubber Custom Mixing Division, Appellant.

[Cite as *Chandler v. Empire Chem., Inc., Midwest Rubber Custom Mixing Div.* (1994), 99 Ohio App.3d 396.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 16708.

Decided Dec. 21, 1994.

*John P. Quinn,* for appellees.

*Harry A. Tipping* and *John W. Clark,* for appellant.

*Lee Fisher,* Attorney General, *Sharon Tassie* and *Wayne D. Williams,* Assistant Attorneys General, Civil Rights Section, for Ohio Civil Rights Commission.

DICKINSON, Judge.

Respondent Empire Chemical, Inc., Midwest Rubber Custom Mixing Division ("Empire"), has appealed from a judgment of the Summit County Court of Common Pleas that affirmed a cease and desist order issued by the Ohio Civil Rights Commission ("commission"). By its order, the commission found in favor of complainant Martha Chandler on claims of sex discrimination and retaliation. Empire argues that the trial court's judgment constitutes an abuse of discretion. This court affirms the judgment of the trial court because its judgment did not constitute an abuse of discretion.

I

A

Chandler was employed by Empire in its shipping department from December 1, 1988 through December 8, 1989. She apparently never had a specific job title.

She performed all of the duties, however, that had previously been performed by a male employee, Dick Adamsky, plus one additional duty. Adamsky had held the title of foreman of the shipping department and had been paid $10,000 per year more than Chandler received.

According to Empire, it conducted a study of Adamsky's duties during 1988 and determined that those duties were essentially clerical. A decision was made, therefore, to "downgrade" the position and to "hire a person whose abilities matched with the clerical duties of the position, rather than continue the placement of a foreman in the position." (Appellant's brief at 1.) When interviewed for the position, Chandler was asked what level of annual salary she was seeking, and she responded that she was seeking $15,000 per year. She was offered the position at that salary. Adamsky had been receiving an annual salary of $25,000.

Adamsky trained Chandler to perform all the duties he had previously been performing. Those duties included supervising hourly employees; tabulating time worked by hourly employees; watching for use and abuse of break time; completing various forms of paperwork, including bills of lading and shipping orders; and ensuring that materials produced at the plant were ready for shipment. Further, Chandler was assigned the additional duty of producing daily shipping reports.

Apparently, shortly after she began her employment, Chandler learned that she was being paid $10,000 less than Adamsky had been receiving. She then made the first of numerous complaints to her supervisors about her different treatment. Her supervisors maintained that Adamsky had been overpaid for the duties he had been performing, rather than that she was being underpaid.

For the most part, Chandler performed her job well and received generally favorable reviews. Several of her superiors, however, found her to be argumentative and unable to maintain cordial relations with co-workers. There was evidence that she screamed and used foul language during several altercations with co-workers and superiors. Chandler did not deny these allegations; she maintained, however, that her actions were not unusual at the plant and that several other Empire employees, including her superiors, engaged in similar conduct.

During November 1989, Chandler contacted the Ohio Civil Rights Commission and discussed her situation. On December 1, 1989, she informed an assistant to Empire's vice president/general manager that she had contacted the commission. Six days later, on December 7, 1989, a confrontation occurred between Chandler and the plant supervisor. Later that day, Empire terminated her employment.

Upon Chandler's termination, Adamsky was reassigned the duties that he had been performing prior to Chandler's employment. The duty of completing daily shipping reports was reassigned to another employee. Approximately one year after Chandler's termination, a male employee was hired to perform the duties that Chandler had performed during her employment. His annual salary was set at $15,000, as hers had been.

### B

Chandler filed a charge with the Ohio Civil Rights Commission on December 11, 1989. Attempts at reconciliation failed, leading the commission to file a complaint against Empire. A hearing examiner found that Chandler had been rightfully terminated, but that she was entitled to an award of backpay based upon the difference between the salary she had received and the salary Adamsky had previously been receiving.

Both sides filed objections to the hearing examiner's determinations. After considering the objections, the commission issued a cease and desist order in which it affirmed the hearing examiner's determination regarding the unequal pay issue, but concluded that Empire's discharge of Chandler had been unlawful, both because it was discriminatory and because it was in retaliation for her having engaged in protected activity. Empire was directed to reinstate Chandler to her previous position at a salary of $25,000 per year; to pay her the difference between what she was paid while employed by Empire and what she would have received if her salary had been $25,000 per year; to pay her the amount she would have received between her discharge and reinstatement at a rate of $25,000 per year, minus any interim earnings she had received; and not to take any disciplinary action against Chandler for a period of one year without notifying the commission within ten days of any such action.

Empire appealed the commission's order to the Summit County Court of Common Pleas. That court affirmed the commission's order, finding that it was supported by reliable, probative, and substantial evidence, the standard enunciated in R.C. 4112.06(E). Empire has timely appealed to this court.

### II

Empire's sole assignment of error in its initial brief to this court was that the trial court's decision was not supported by reliable, probative, and substantial evidence. It conceded in its reply brief, however, that the scope of this court's review of the trial court's judgment is limited to determining whether the trial court abused its discretion in affirming the commission's order. See *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 260–261, 533 N.E.2d 264, 266–268. In order for this court to conclude that the

trial court's judgment was an "abuse of discretion," we must conclude that the trial court's judgment was unreasonable, arbitrary, or unconscionable. *In re Adoption of Ridenour* (1991), 61 Ohio St.3d 319, 320, 574 N.E.2d 1055, 1057.

## A

■ Empire first challenges that part of the trial court's judgment which determined that the commission's finding that Chandler was fired because of her sex was supported by reliable, probative, and substantial evidence. It has argued that Chandler was "openly hostile" to her co-workers and supervisors and that her hostility, not her gender, caused her discharge.

R.C. 4112.02(A) provides that an employer cannot discharge an employee because of that employee's sex. The Ohio Supreme Court has held that "federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000(e) *et seq.*, Title 42, U.S. Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112. * * *" *Plumbers & Steamfitters Joint Apprenticeship Commt. v. Ohio Civil Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 202, 421 N.E.2d 128, 131. It is necessary, therefore, to look to federal cases construing Title VII to determine the analysis applicable to a claim of sex discrimination in violation of R.C. 4112.02(A).

A plaintiff in a Title VII claim has an initial burden of establishing a prima facie case of sex discrimination by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668, 677. If the employee is successful in carrying that burden, it is presumed that she was discharged because of her sex. The employer can overcome that presumption by articulating a legitimate, nondiscriminatory reason for the discharge. *Id.* at 802, 93 S.Ct. at 1824, 36 L.Ed.2d at 678. The employer's burden to overcome the presumption is not onerous: it merely must raise a genuine issue of fact regarding whether it discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254–255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207, 216. Should the employer carry its burden, the employee must then "be afforded a fair opportunity to show that [the employer's] stated reason for [the employee's discharge] was in fact pretext." *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825, 36 L.Ed.2d at 679.

The trial court did not abuse its discretion in this case by determining that Chandler presented reliable, probative, and substantial evidence supportive of a prima facie case that she had been discharged because of her sex. She presented evidence that she was a woman, that she was performing the duties assigned to her, that she was discharged, and that she was replaced by a man. The burden then shifted to Empire to establish a nondiscriminatory reason for her firing. It met that burden by stating that Chandler had been discharged because of her

outbursts, profanities, and general tendency to be uncooperative. The trial court did not abuse its discretion, however, in determining that Chandler presented reliable, probative, and substantial evidence that Empire's proffered reason was merely pretextual. Several of Empire's employees, including three supervisors, testified that shouting, yelling, and the use of profanity was commonplace at the Empire plant. Their testimony characterized the plant as a stressful, often contentious, environment, where skirmishes and fights (one of which escalated to physical violence) were not unusual. The supervisors at the plant testified that complainant's behavior exceeded even those standards. Chandler, however, proffered evidence, in the form of her own testimony and the testimony of the plant's scheduling clerk, that her behavior was similar to that of the male employees. The trial court did not abuse its discretion in concluding that there was reliable, probative, and substantial evidence before the commission to support its conclusion that Chandler was fired because of her sex.

## B

■ Empire next challenges that part of the trial court's judgment which determined that the commission's finding that Chandler was paid less than Adamsky because of her sex was supported by reliable, probative, and substantial evidence. Chandler presented evidence to the commission supportive of a prima facie case that she was paid less because she was a woman. She presented evidence that she was a woman, that she was performing the same duties that Adamsky had been performing, that Adamsky was a male, and that she was paid $10,000 less annually than Adamsky had been receiving. Empire presented evidence that Adamsky was paid more because he was a foreman and that the position, when held by Chandler, was "downgraded" because the duties it entailed were essentially clerical.

There was evidence before the commission, however, that Chandler had in fact acted as foreman of the shipping department. Among other things, she supervised hourly employees and wore the type of uniform worn by supervisors. Empire has pointed out that she was eventually replaced by a man who was paid the same salary she had been receiving. Empire did not hire that man, however, until approximately a year after it had fired Chandler. By that time, the commission's conciliation efforts had failed, and it was clear that Chandler would pursue her discrimination claim against it.

Empire has also noted that Chandler was paid the amount she requested at the time she was hired. At that time, however, she did not know she was replacing a man who had been receiving $10,000 a year more than the amount she had requested for performing the same duties. Chandler's ignorance of the proper salary for the position she was to hold was not a legal justification for discrimination against her. The trial court did not abuse its discretion in concluding that

there was reliable, probative, and substantial evidence before the commission supportive of its finding that Empire paid Chandler less than it had paid Adamsky for performing the same duties because she was a woman.

## C

Finally, Empire has challenged that part of the trial court's judgment which determined that the commission's finding that Chandler was discharged in retaliation for engaging in protected activity was supported by reliable, probative, and substantial evidence. It has asserted that the trial court failed to consider other, legitimate reasons for Chandler's discharge. Specifically, Empire asserts that Chandler was discharged because of her poor working relationship with other employees at the plant.

Again, federal law provides the applicable analysis for reviewing retaliation claims. In order to support her claim of retaliatory discharge, Chandler was required to establish (1) that she engaged in protected activity; (2) that she was the subject of adverse employment action; and (3) that a causal link existed between the protected activity and the adverse action. *Jackson v. RKO Bottlers of Toledo, Inc.* (C.A.6, 1984), 743 F.2d 370, 375. If she successfully established a prima facie case, the burden shifted to Empire to articulate a legitimate reason for its action. *Burrus v. United Telephone Co. of Kansas* (C.A.10, 1982), 683 F.2d 339, 343, certiorari denied (1982), 459 U.S. 1071, 103 S.Ct. 491, 74 L.Ed.2d 633. If it carried that burden, the burden then shifted back to Chandler to show that the articulated reason was merely a pretext. *Id.*

Chandler presented evidence supportive of a prima facie case of retaliatory discharge: (1) she made an inquiry to the commission regarding wage discrimination; (2) she was fired; and (3) her firing occurred shortly after Empire learned of her inquiry to the commission. Empire then articulated as the reason for her firing the fact that she had an uncooperative attitude, used profanity, and screamed at fellow employees. As discussed previously, however, Chandler presented evidence that other employees were not discharged for engaging in the same type of activities. The trial court did not abuse its discretion by concluding that there was reliable, probative, and substantial evidence before the commission supportive of its finding that Chandler was discharged for engaging in protected activity.

## III

Defendant's assignment of error is overruled. The judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, P.J., and COOK, J., concur.