SHOENFELT, Appellant,

v.

OHIO CIVIL RIGHTS COMMISSION et al., Appellees.

[Cite as *Shoenfelt v. Ohio Civ. Rights Comm.* (1995), 105 Ohio App.3d 379.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 17011.

Decided July 19, 1995.

380

*Daniel Wilson,* for appellant.

*Marilyn Tobocman,* for appellees.

REECE, Judge.

Appellant, James Shoenfelt, appeals the trial court's affirmance of the Ohio Civil Rights Commission's ("OCRC") determination that he engaged in racial

discrimination and its award of attorney fees as a consequence of his discriminatory acts. We affirm.

## I

In October 1989 Joann Wahab was seeking a new apartment. She read a newspaper advertisement listing an available rental in the Wooster–Hawkins area of Akron, Ohio. Wahab responded to the advertisement by phone and talked to James Shoenfelt, the owner and landlord of the property. Shoenfelt indicated that the property was available. He then asked Wahab whether her race was white or black. She responded that she was white. Shoenfelt then told her that he only rented to black people.

Several weeks afterwards, Shoenfelt contacted Wahab. He indicated that he really did not mean what he stated in their first conversation. He offered the apartment to Wahab with a waiver of the security deposit and the first month's rent. Wahab declined the offer and stated that she was contacting an attorney.

Wahab then contacted the Fair Housing Contact Service ("FHCS") in November 1989 to report Shoenfelt's actions. An FHCS counselor investigated the complaint by calling Shoenfelt and inquiring about the availability of rental units. Shoenfelt asked the counselor if she was white or black. The counselor inquired whether it mattered and Shoenfelt responded that it did since he did not rent to whites.

In December 1989 Wahab filed a complaint with OCRC alleging that Shoenfelt engaged in racial discrimination by denying her the opportunity to rent the apartment. OCRC investigated the complaint. OCRC found probable cause to believe that Shoenfelt had violated R.C. 4112.02(H), which prevents a landlord from refusing to rent property based on race. The case proceeded to a hearing before an officer of OCRC.

At the hearing, several witnesses testified. Testifying about her conversation with Shoenfelt, Wahab stated:

"Yes, first his secretary answered, and she told me, 'Just a minute,' and she got Jim Shoenfelt, and he introduced himself, and said, 'Are you white or black?' and I said, 'I'm white,' and he goes, 'I don't rent to whites,' and I said to him, I said, 'Well, what are you?' because he sounded white, and he said, 'White,' and I said, 'Oh, you like blacks, huh?' and he goes, 'Yeah, I prefer blacks.' And that was the end of the conversation, then we hung up."

The counselor for FHCS also testified. She stated that she called Shoenfelt to inquire about a rental. She testified that he answered the phone and "asked me if I was black or white. And, I asked him if it mattered, and he said, yes because he didn't rent to white people." An investigator for OCRC also testified. She

stated that she questioned Shoenfelt about the allegations in Wahab's complaint. She testified he responded that "he did not show that particular area of property to Caucasians. And then he went on to explain his reasoning why based on past practice of having keys thrown at him, and Caucasian possible renters become irate for taking them over into that particular area. He did also tell me that is a predominately black area."

Shoenfelt testified in his defense. On direct examination, the following colloquy ensued:

"Q. Well, did you say to Ms. Wahab that, well did you have, do you recall asking her whether or not she was white or black?

"A. It's possible. It may have happened. Obviously from what's already happened in this trial, it's a possibility. But then again, she would hang up on me so quickly, I mean, if anybody says something like that, and immediately somebody sues you, are you in trouble? What's left in this world for joking or anything like that? I mean, you ask a question, the answer's given, and immediately you got an attorney and I'm in trouble. I mean, I think the facts would show that I'm not that type of person when I rent to people.

"Q. All right. Well, would you recall saying to Ms. Wahab that you don't rent to whites?

"A. I'm not going to say if I recall exactly those words, I really am not going to say if I recall because I can now see, this could turn out to be, I could be a real criminal if I would say such a thing. And, I if I ever said anything like that, believe me, I will never joke with anybody, or say anything, it's like I saw in Time magazine, the thought police are out there looking for you. I, you know I would rent to anybody. I would rent to you. * * *"

The hearing officer found that OCRC presented evidence that Shoenfelt had violated R.C. 4112.02(H) and that he routinely asked potential renters about their race. The hearing officer recommended that OCRC order Shoenfelt to cease and desist his practices. The hearing officer recommended no award of actual damages because no evidence existed that Wahab had incurred any out-of-pocket expenses. The officer did recommend $200 in punitive damages. Finally, the hearing officer recommended that OCRC award reasonable attorney fees to be paid by Shoenfelt to the office of the Ohio Attorney General ("OAG").

OCRC adopted the recommendation of the officer to order Shoenfelt to cease and desist his activities. OCRC, however, modified the punitive damage award. It ordered Shoenfelt to pay $5,000 in punitive damages. It also awarded OAG $3,500 in attorney fees pursuant to R.C. 4112.05(G). Shoenfelt appealed OCRC's decision to the Summit County Common Pleas Court.

In its review, the trial court determined that the evidence supported the hearing officer's finding of racial discrimination in violation of R.C. 4112.02(H). Furthermore, the trial court determined that OCRC permissibly modified the officer's recommendation concerning punitive damages. Specifically, the trial court pointed to Shoenfelt's consistent minimization of the seriousness of his conduct, his characterization of his conduct as a joke, and the several instances where potential white renters were denied the opportunity to view the apartment based on their race. Thus, according to the trial court, OCRC's decision was based on reliable, probative and substantial evidence. In addition, the trial court determined that the award of attorney fees was appropriate under R.C. 4112.05(G). Shoenfelt now appeals the trial court's affirmance of the decision of OCRC.

## II

Shoenfelt asserts two assignments of error. First, he argues that the grant of $5,000 in punitive damages was not supported by reliable, probative and substantial evidence. Second, he argues that the award of attorney fees in the amount of $3,500 to OAG was improper.

## A

In his first assignment of error, Shoenfelt contends that the evidence did not support the award of punitive damages, and therefore, the trial court erred in affirming the decision of OCRC. He argues that the award of punitive damages must be based on a showing of malicious intent and that the evidence did not support a finding that his actions were a product of malicious intent.

In reviewing an order of an administrative agency under R.C. 119.12, a common pleas court is generally required to affirm the agency's order unless it finds that the order was not supported by reliable, probative, and substantial evidence and was not in accordance with the law. *Bottoms Up, Inc. v. Ohio Liquor Control Comm.* (1991), 72 Ohio App.3d 726, 728, 596 N.E.2d 475, 476. R.C. 119.12 provides, in part:

"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law."

■ The determination of whether an agency's decision is supported by reliable, probative and substantial evidence is essentially a "question of the absence or presence of the requisite quantum of evidence." *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 67, 407 N.E.2d 1265, 1267, citing *Andrews v. Ohio Bd. of Liquor Control* (1955), 164 Ohio St. 275, 58 O.O. 51, 131 N.E.2d 390. A common pleas court is required to give "due deference to the administrative resolution of evidentiary conflicts." *Id.* As a reviewing court, a common pleas court must also determine whether an agency's decision is "in accordance with law." That determination often requires a "hybrid form of review." *Id.*

■ In the version of R.C. 4112.05(G) in effect at the time of OCRC's decision, punitive damages up to $5,000 could be awarded against a party found to have engaged in housing discrimination on account of race in violation of R.C. 4112.02(H). The standard which governs the award of punitive damages in a case of housing discrimination is contained in Ohio Adm.Code 4112-6-02, which provides:

" * * * The purpose of an award of punitive damages is to deter unlawful conduct in the future.

"It is the policy of the commission that punitive damages are appropriate whenever a respondent engages in intentional discrimination. The amount of punitive damages to be awarded depends on the circumstances of each case. The commission will look at the nature of the respondent's conduct, the respondent's prior history of discrimination, respondent's size and profitability, respondent's cooperation or lack of cooperation during the investigation of the charge, and the effect the respondent's actions had on the complainant."

In its decision, OCRC found that although Shoenfelt did not act with malice, punitive damages were necessary to deter future discriminatory practices. Upon review, the trial court found that Shoenfelt engaged in consistent discriminatory practices and affirmed OCRC's decision by stating that "[Shoenfelt's] actions did not simply discourage white applicants by informing them that the units were in a predominantly black area. Rather, his actions effectively barred whites from the accommodations without consideration of their disposition toward the area in which the units are located."

Shoenfelt argues that punitive damages should not be based on their deterrent effect, but rather, on malicious conduct which must serve as a predicate to the award of punitive damages. Accordingly, because OCRC specifically did not find "malice," Shoenfelt contends the punitive damages were improper.

■ When interpreting a statute, a court cannot ignore the plain and unambiguous nature of the language of the statute. *Pike–Delta–York Local School Dist. Bd. of Edn. v. Fulton Cty. Budget Comm.* (1975), 41 Ohio St.2d 147, 156, 70 O.O.2d 300, 305, 324 N.E.2d 566, 571. The very language of Ohio Adm.Code

4112–06–2 demonstrates that punitive damages serve to deter future discriminatory practices. However, the text does not indicate that there must be a finding of "malice" before punitive damages are awarded. Rather, when OCRC makes a determination that punitive damages are warranted, the overriding purpose that governs such an award is that the damages serve the purpose of deterring the accused from engaging in future discrimination. See, *e.g.*, *Marr v. Rife* (C.A.6, 1974), 503 F.2d 735, 744 (holding that punitive damages in discrimination cases can be awarded "as a deterrent measure"); *Darby v. Heather Ridge* (E.D.Mich. 1993), 827 F.Supp. 1296, 1300 (applying *Marr* and holding that punitive damages are appropriate for deterrence). Thus, no finding of malice was required.

Furthermore, our review of the trial court's affirmance of the punitive damage award does not indicate that the court abused its discretion as the damage award was supported by reliable, probative and substantial evidence. Clearly, Shoenfelt engaged in past discriminatory practices that prevented whites from renting his apartments. Furthermore, he intended to discriminate against Wahab since he would not rent to her after she indicated the nature of her race. Moreover, the evidence indicated that he did the same with an investigator. Based on the foregoing evidence, the trial court did not err when it affirmed OCRC's award of punitive damages which served to deter future discriminatory conduct.

## B

In his second assignment of error, Shoenfelt contends that the trial court improperly affirmed OCRC's award of attorney fees to OAG. He argues that OAG should seek fees on behalf of OCRC, and not receive attorney fees directly. Inasmuch as this assignment of error concerns the trial court's legal findings, we must determine whether the trial court's affirmance of the award "was in accordance with law."

Neither party disputes that OAG is statutorily required to represent OCRC in litigation pursuant to R.C. Chapter 4112. R.C. 4112.10. Furthermore, OCRC can award attorney fees for violations of R.C. 4112.02(H), which prohibits housing discrimination. R.C. 4112.05(G)(1). In contemplation of an attorney fee award to OAG, the General Assembly enacted R.C. 109.11, which states:

"There is hereby created in the state treasury the attorney general reimbursement fund that shall be used for the expenses of the office of the attorney general in providing legal services and other services on behalf of the state. All amounts received by the attorney general as reimbursement for legal services and other services that have been rendered to other state agencies shall be paid into the state treasury to the credit of the attorney general reimbursement fund. All amounts awarded by a court to the attorney general for attorney's fees, investigation costs, expert witness fees, fines, and all other costs and fees associated with representation provided by the attorney general and all amounts awarded to the attorney general by a court shall be paid into the state treasury to the credit of the attorney general reimbursement fund."

While R.C. 109.11 does not mandate the direct payment to OAG in this case, it certainly allows for such payment. Specifically, the statute states that attorney fees "awarded * * * to the attorney general" should be paid into the treasury. Reading this statute in connection with R.C. 4112.05(G), which permits the award of attorney fees in this case, and R.C. 4112.10, which requires OAG to represent OCRC, leads us to conclude that the award of attorney fees to OAG was proper. See, generally, *State ex rel. Paul v. Ohio State Racing Comm.* (1989), 60 Ohio App.3d 112, 121, 574 N.E.2d 587, 595 ("The state and its entities upon proper proof, and like any private party, are entitled to recover attorney fees and costs pursuant to Civ.R. 3[C][2]."); *Harris v. Bucy & Hill, Inc.* (May 13, 1987), Scioto App. No. 1614, unreported, 1987 WL 12248 (holding that attorney fees could be paid to OAG). Thus, the trial court's determination was in accordance with law, and therefore it did not err when it affirmed the award of attorney fees.

### III

Appellant's assignments of error are overruled. The judgment of the trial court is affirmed.

*Judgment accordingly.*

QUILLIN, P.J., and SLABY, J., concur.