PROCTOR, Appellant,

v.

OHIO CIVIL RIGHTS COMMISSION et al., Appellees.

[Cite as *Proctor v. Ohio Civ. Rights Comm.*, 169 Ohio App.3d 527, 2006-Ohio-6007.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 23198.

Decided Nov. 15, 2006.

528

Kathleen L. Proctor, pro se.

Jim Petro, Attorney General, and David Oppenheimer, Assistant Attorney General, for appellee Ohio Civil Rights Commission.

Aretta K. Bernard and Karen D. Adinolfi, for appellee DialAmerica Marketing.

BOYLE, Judge.

{¶ 1} Appellant, Kathleen L. Proctor, appeals from the judgment of the Summit County Court of Common Pleas affirming the decision of appellee, the Ohio Civil Rights Commission, finding no probable cause to support an employment-discrimination complaint. We affirm.

I

{¶ 2} Appellant began working for appellee, DialAmerica Marketing, Inc., as a telephone sales representative on June 7, 2004. She voluntarily resigned on July 19, 2004, for health reasons, specifically complications from a congenital hip defect. During the time that she worked for DialAmerica, Appellant received favorable evaluations.

{¶ 3} On June 7, 2005, after recovering from hip-replacement surgery, appellant returned to work at DialAmerica. DialAmerica knew that appellant had recently had a hip replacement. On her first day back, appellant attended a training session. She also signed a "Quality Agreement" as a condition of her employment. The agreement prohibited her from using inappropriate comments in the workplace, exhibiting unprofessional behavior, and using profane language on the sales floor. DialAmerica had a policy in place prohibiting employment discrimination on the basis of disabilities.

{¶ 4} When appellant came to the sales floor to begin working on June 7, 2005, she immediately attempted to exchange the chair at her work station for a chair with arms. Denise Englehart, a supervisor, advised appellant that the armchairs could not be used at the sales representatives' workstations because they were too bulky and obstructed the aisle, thereby violating fire codes. Appellant informed Englehart that she needed to use an armchair because of the problems with her hip. Englehart told appellant to speak with Alisa Cullen, the shift manager, and to bring documentation from her physician to verify her need for an armchair.

{¶ 5} On June 8, 2005, appellant told Englehart that she had personally spoken to a fire marshal, who informed her that the armchairs did not pose a fire hazard. Appellant was again advised to speak with Cullen about the matter. Appellant did so but did not bring the requested documentation, telling Cullen that the armchair policy was "bulls--t."

{¶ 6} On June 10, 2006, appellant called Rebecca Pate, a recruiting specialist with DialAmerica, into the office break room. Appellant yelled at Pate about her need for an armchair and began to read aloud from a poster on the wall outlining the legal rights of disabled persons in the workplace. Pate called for assistance from Laura Criss, an assistant manager who was filling in for Cullen that day. Criss asked whether appellant had documentation of her need for an armchair and again explained that the use of an armchair at her workstation would pose a fire hazard. Appellant told Criss to "shut up" and continued to yell at her about disability law. Criss walked away. Appellant returned to the sales floor, where she caused a scene among other employees who were on the telephone with customers. She then pulled aside Lisa Jones, a "coach" for the sales representatives, and made more profane comments about Criss. At this point, branch manager Jennifer Esterle told Criss to send appellant home for the weekend. Appellant left, telling Criss that she intended to sue and referring to her as a "stupid b---h." Appellant, for her part, claims that when she arrived at work that day, a Post–It note was attached to each armchair with the words "Do not move" written on each note. She denies that she used profanities and states that Criss and other supervisors repeatedly berated her solely for requesting the armchair.

{¶ 7} After appellant left work on June 10, 2005, Criss contacted Stacie Joyce, an employee-relations specialist at DialAmerica's human resources office. Joyce determined that appellant's conduct, regardless of her disability status, warranted termination of her employment. Appellant's employment was terminated that day. DialAmerica's removal reports cite the reason as "Misconduct/Improper Behavior." Documentation from appellant's physician regarding her disability and her need for an armchair arrived at DialAmerica's office by fax three days later, on June 13, 2005. On June 17, 2005, appellant filed an affidavit with the Ohio Civil Rights Commission claiming disability discrimination and retaliation in violation of R.C. 4112.02. On October 6, 2005, pursuant to an investigation, the commission issued a finding that there was no probable cause to believe that DialAmerica had engaged in an unlawful discriminatory practice. Appellant filed an administrative appeal to the Summit County Court of Common Pleas, which affirmed the commission's "no probable cause" decision in an order dated March 17, 2006. Appellant timely appealed to this court, asserting seven assignments of error.

## II

### A

### First Assignment of Error

The court of common pleas erred in not identifying prejudicial error displayed by the Ohio Civil Rights Commission and the Ohio Attorney General's office. The OCRC record supports a prima facie case of unlawful discrimination and retaliation, however, the court of common please [sic] ignored the substantial evidence (facts) present in the case in favor of the arbitrary, capricious, and not in accordance with law arguments of the defense, defendants [sic] that are monumentally prejudicially biased. This action deprives Ms. Proctor of the right to a fair judicial review and an impartial adjudication from the OCRC.

{¶ 8} Appellant's first assignment of error appears to challenge the trial court's findings of fact. In an administrative appeal from the Ohio Civil Rights Commission, the trial court is required to uphold the commission's finding so long as the finding is not arbitrary, capricious, or irrational. *McCrea v. Ohio Civ. Rights Comm.* (1984), 20 Ohio App.3d 314, 317, 20 OBR 416, 486 N.E.2d 143. The trial court must also give due deference to the commission's resolution of evidentiary conflicts. *Cleveland Civ. Serv. Comm. v. Ohio Civ. Rights Comm.* (1991), 57 Ohio St.3d 62, 65, 565 N.E.2d 579; *Shoenfelt v. Ohio Civ. Rights Comm.* (1995), 105 Ohio App.3d 379, 384, 663 N.E.2d 1353. Furthermore, an appellate court may review the trial court's findings only for an abuse of discretion. *Cleveland Civ. Serv. Comm.,* 57 Ohio St.3d at 65, 565 N.E.2d 579.

An abuse of discretion is more than an error of law or judgment, but rather, it is a finding that the court's attitude is unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140. Under this standard of review, an appellate court may not merely substitute its judgment for that of the trial court. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748.

{¶ 9} One who claims employment discrimination on the basis of disability in violation of R.C. 4112.02(A) must show (1) that the plaintiff meets the definition of a disabled person under R.C. 4112.01(A)(13); (2) that the plaintiff can safely and substantially perform the essential functions of the job; and (3) that the discriminatory action was taken at least in part because of the plaintiff's disability. *Columbus Civ. Serv. Comm. v. McGlone* (1998), 82 Ohio St.3d 569, 571, 697 N.E.2d 204. In addition, an employer may not retaliate against an employee for opposing the employer's unlawful discriminatory practices. R.C. 4112.02(I). A plaintiff who claims to have been dismissed in retaliation must show that (1) the plaintiff engaged in a protected activity (such as opposing an unlawful discriminatory practice); (2) the plaintiff was the subject of an adverse employment action; and (3) a causal link exists between the protected activity and the employer's adverse action. *Smith v. Wayne Cty. Dept. of Human Servs.*, 9th Dist. No. 02CA0013, 2003-Ohio-364, 2003 WL 187591, at ¶ 17. When a prima facie showing of disability discrimination or retaliation is made, the burden shifts to the employer to show a nondiscriminatory reason for the action. *Hood v. Diamond Prod., Inc.* (1996), 74 Ohio St.3d 298, 302, 658 N.E.2d 738; *Chandler v. Empire Chem., Inc.* (1994), 99 Ohio App.3d 396, 400, 650 N.E.2d 950. If the employer makes this showing, the burden shifts back to the employee to show that the nondiscriminatory reason was a mere pretext. *Hood,* 74 Ohio St.3d at 302, 658 N.E.2d 738; *Chandler,* 99 Ohio App.3d at 400, 650 N.E.2d 950.

{¶ 10} Having reviewed the evidence in the record, we do not find that the trial court abused its discretion in determining that the commission's findings were not arbitrary, capricious, or irrational. Appellant's supervisors have stated that they simply asked appellant to submit documentation of her need for an armchair. According to several witnesses, whose statements substantially corroborate each other, appellant responded to this request by arguing with her supervisors over their interpretation of fire codes and disability laws, culminating with her profane comments on the sales floor on June 10, 2005. Even if such conduct could be considered a form of opposing unlawful discrimination, as contemplated by R.C. 4112.02(I), the right to oppose discrimination does not entail a right to engage in conduct that interferes with the attainment of the employer's goals, violates the employer's legitimate workplace rules, or disrupts the work environment. See *Booker v. Brown & Williamson Tobacco Co., Inc.*

(C.A.6, 1989), 879 F.2d 1304, 1312; *Chandler*, 99 Ohio App.3d at 400–401, 650 N.E.2d 950. DialAmerica had established clear rules requiring employees to act professionally in the workplace and to refrain from the use of profanity on the sales floor. The commission could reasonably have determined, based on the evidence in the record, that appellant was discharged for violating those rules rather than because she had a disability or requested accommodations for her disability.

{¶ 11} To refute DialAmerica's claims as to appellant's misconduct, appellant has provided no statements from any other witnesses to corroborate the disputed facts. Appellant claims that another new employee with no known disabilities, Justin Edmonds, was permitted to use an armchair at work[1]. Appellant prepared her own transcript of a telephone conversation that she allegedly had with Edmonds, in which Edmonds agreed to write a statement saying that he was given an armchair. No such statement from Edmonds appears in the record.

{¶ 12} Furthermore, DialAmerica has documented a variety of accommodations that have been made for employees with various medical conditions and disabilities. Among these, DialAmerica has provided an armchair for at least one employee and other special seating arrangements for two others, apparently relocating employees in need of such accommodations to specific workstations where their chairs would not obstruct evacuation routes. DialAmerica has also documented the termination of numerous other employees without disabilities on the basis of misconduct similar to the misconduct in which appellant engaged, including the use of profanity on the sales floor and insubordination.

{¶ 13} Based on this evidence, the commission could reasonably have found that appellant was terminated for misconduct rather than for being disabled or for requesting an accommodation, and it was not an abuse of discretion for the trial court to accept this finding. Appellant's first assignment of error is overruled.

## B

### Second Assignment of Error

The court of common pleas erred in not identifying Ms. Proctor as a qualified individual with a disability.

{¶ 14} Appellant claims that the commission and the trial court erroneously determined that she is not a disabled person under R.C. 4112.01(A)(13). Neither

---

1. Edmonds, incidentally, began his employment with DialAmerica on the same day as appellant. According to employment records provided by DialAmerica, Edmonds was discharged just one day before appellant for being rude to a customer on the telephone.

the trial court nor the commission made such a finding. The trial court specifically found that even if appellant is disabled, there exists ample evidence to support a finding that DialAmerica terminated appellant because she was insubordinate, used profanity on the sales floor, and disrupted workplace operations with her conduct, rather than because she was disabled or because she requested accommodations for her disability. Appellant's second assignment of error is overruled.

C

### Third Assignment of Error

The court of common pleas erred in not acknowledging that the request for medical confirmation was pretext. The determinations and subsequent judgements [sic] regarding the medical confirmation are not in accordance with law and are arbitrary [and] capricious.

{¶ 15} Appellant's entire argument as to this assignment of error reads as follows: "There is direct evidence, substantial evidence, present in the OCRC Record that proves that the medical confirmation was pretext." Appellant gives no indication as to what this evidence might be, however.

{¶ 16} Again, we note that the trial court must give due deference to the Civil Rights Commission's resolution of disputed facts. *Shoenfelt,* 105 Ohio App.3d at 384, 663 N.E.2d 1353. Furthermore, an appellant bears the burden of affirmatively demonstrating the error on appeal and substantiating the arguments in support. App.R. 16(A)(7); Loc.R. 7(A)(7). See *Figley v. Corp,* 9th Dist. No. 04CA0054, 2005-Ohio-2566, 2005 WL 1225936, at ¶ 8. It is not the duty of this court to develop an argument in support of an assignment of error, even if one exists. *State v. Tanner,* 9th Dist. No. 04CA0062–M, 2005-Ohio-998, 2005 WL 544809, at ¶ 24; *Prince v. Jordan,* 9th Dist. No. 04CA008423, 2004-Ohio-7184, 2004 WL 3017207, at ¶ 40; *Klausman v. Klausman,* 9th Dist. No. 21718, 2004-Ohio-3410, 2004 WL 1461356, at ¶ 29. Appellant's bare assertion is insufficient to meet her burden of establishing error. The commission saw no irregularities in DialAmerica's request for documentation of appellant's need for accommodations, and appellant has failed to show that it was an abuse of discretion for the trial court to accept that determination as not being arbitrary, capricious, or irrational. Appellant's third assignment of error is therefore overruled.

D

### Fourth Assignment of Error

The court of common pleas erred in losing the trier of facts and the mischaracterizing of the evidence when they [sic] relied on the 'facts' presented by [the commission's attorney] and [Dialamerica's attorney].

{¶ 17} Appellant's argument under the fourth assignment of error concentrates on the legality of DialAmerica's request for documentation to confirm her need for an armchair. Appellant asserts that when an employee's need for an accommodation is obvious, the employer may not request documentation. Appellant argues that her need for an accommodation was obvious to her supervisors at DialAmerica because her supervisors knew that she had recently had a hip replacement and could see that she walked with a limp. Therefore, appellant argues, she could not be obligated to provide documentation of her need for an armchair.

{¶ 18} Appellant does not cite any statutes, regulations, or case law for her proposition, but only quotes from what appears to be an informational publication from the Equal Employment Opportunity Commission. Because this publication is not in the record before us, we cannot consider it as evidence. Even if appellant's statement of law is correct, however, and even if DialAmerica knew that appellant had undergone a hip replacement and walked with a limp, the commission could rationally have found that appellant's need for the specific accommodation requested—special seating—would not have been obvious to appellant's supervisors. The trial court did not abuse its discretion in this regard. Appellant's fourth assignment of error is overruled.

E

### Fifth Assignment of Error

The court of common pleas erred in understanding that in order for the fire hazard, [and the] fire policy to constitute a direct threat [they] must meet certain legal criteria. The determinations and subsequent judgments regarding the fire hazard, etc[.] are arbitrary, capricious and not in accordance with [the] law.

{¶ 19} An employer may establish qualification standards to assure that disabled employees do not "pose a direct threat to the health or safety of other individuals in the workplace." Section 12113, Title 42, U.S.Code. A qualification standard is a minimum requirement that an applicant for a position must meet in order to be eligible for that position. Section 1630.2(q), Title 29, C.F.R. In her fifth assignment of error, appellant argues that the possibility of violating fire codes by using armchairs does not constitute a direct threat and that DialAmerica did not apply the direct-threat standard uniformly because other employees at her office were given armchairs.

{¶ 20} Appellant appears to be attempting to rebut a defense that appellees have not raised. Appellees do not suggest that the ability to sit in an armless chair is a qualification standard for the position of a telephone sales representa-

tive or that a direct threat would result if DialAmerica made accommodations for disabled employees. DialAmerica has established a policy for office furnishings, which is well within its authority as an employer. DialAmerica would have this authority even if the armchair restrictions were not necessary to avoid a fire hazard or comply with fire regulations, although ample evidence exists that this was, in fact, the purpose for the armchair policy. Furthermore, DialAmerica has produced evidence to show that special seating accommodations have been made for other individuals with disabilities or medical needs. Finally, appellant has not shown that other employees with disabilities or medical needs who were given armchairs received them without documenting their needs in the same manner that DialAmerica requested of appellant. Appellant again states that Justin Edmonds received an armchair even. though he had no disability at all, but appellant has presented no evidence to support this claim other than the transcript of her telephone conversation with Edmonds, which appellant prepared herself. We are not convinced that the direct-threat defense had any bearing on the decision of the commission or that of the trial court. The fifth assignment of error is overruled.

F

### Sixth Assignment of Error

The court of common pleas erred in ruling that a determination based in hearsay of the supervisors who actively engaged in unlawful discrimination is not in accordance with [the] law. The court erred in not recognizing that direct evidence of unlawful harassment by supervisors that result in a tangible act, termination, does not allow an employer an affirmative defense. Beyond the proof of the prima facie demonstrating unlawful discrimination and harassment there is no additional burden of proof for Ms[.] Proctor. Employers who engage in unlawful discrimination and harassment are not lawfully entitled to an affirmative defense. [Dialamerica's] numerous statements from the supervisors who engage[d] in the unlawful harassment are not admissible.

{¶ 21} Appellant next contends that the trial court erroneously placed the burden of proof on her to show that the nondiscriminatory reason for terminating her employment was a mere pretext. Appellant cites *Burlington Industries, Inc. v. Ellerth* (1998), 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633, and *Faragher v. Boca Raton* (1998), 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662. She claims that these cases stand for the proposition that no defense is ever available to a claim of discrimination when a supervisor's discriminatory acts culminate in a tangible employment action, such as termination of employment. This argument misinterprets the holdings in both cases. Both *Ellerth* and *Faragher* concerned affirmative defenses from claims of vicarious liability against employers in cases

when supervisors sexually harassed their subordinates. In both cases, the employers argued that even if some of their employees had harassed other employees, the employer could defend against a harassment suit by showing that it had taken reasonable means to prevent the harassment. *Burlington,* 524 U.S. at 765, 118 S.Ct. 2257, 141 L.Ed.2d 633; *Faragher,* 524 U.S. at 777, 118 S.Ct. 2275, 141 L.Ed.2d 662. Assuming, arguendo, that this case law applies to disability-discrimination cases as well as sexual-harassment cases, appellant again attempts to refute a defense that DialAmerica has not raised. DialAmerica has not challenged its vicarious liability in the present case. The company has not attempted to show that even if its employees had committed unlawful discrimination, the company would not be liable. The parties' dispute is solely over the reason for appellant's termination—that is, whether any unlawful discrimination took place at all. As previously noted, the claimant in an employment-discrimination case bears the initial burden of showing that an adverse employment action was the result of unlawful discrimination. When that showing is made, the employer may, in its defense, show that the adverse action was taken for a legitimate, nondiscriminatory reason. *Hood,* 74 Ohio St.3d at 302, 658 N.E.2d 738; *Chandler,* 99 Ohio App.3d at 400, 650 N.E.2d 950. The burden then shifts back to the claimant to show that the nondiscriminatory purpose was a mere pretext. *Hood,* 74 Ohio St.3d at 302, 658 N.E.2d 738; *Chandler,* 99 Ohio App.3d at 400, 650 N.E.2d 950. The trial court found that appellant's workplace outburst on June 10, 2005, was a legitimate nondiscriminatory reason for discharging appellant, given without pretext, and based on the evidence, we do not believe that the trial court abused its discretion in making this determination. Appellant's sixth assignment of error is overruled.

### G

### Seventh Assignment of Error

The court of common pleas erred [in] establishing the facts of the case on a statement that is unsigned. It is a plain error of evidence that should not have been an oversight to a trail [sic] court, the court of common pleas.

{¶ 22} In her final assignment of error, appellant asserts that the written statement of Denise Englehart was inadmissible because Englehart failed to sign the statement. Assuming, arguendo, that the contents of that particular statement were essential to the rulings of the commission and the trial court, appellant has not cited any legal authority for the proposition that the statement needed to be signed in order to be admissible before the commission. The commission is not required to comply with the Rules of Evidence applicable to the courts even if the proceedings reach the hearing stage, much less in an investigation to determine whether probable cause exists. R.C. 4112.05(E); see, also, *Robinson*

*v. Springfield Local School Dist. Bd. of Edn.* (2001), 144 Ohio App.3d 38, 48, 759 N.E.2d 444 (holding that the Rules of Evidence do not apply to administrative agencies); Evid.R. 101(C) (omitting administrative proceedings from a listing of situations, other than court proceedings, in which the Rules of Evidence apply). Appellant's seventh assignment of error is overruled.

### III

{¶ 23} Appellant's seven assignments of error are overruled. The judgment of the trial court affirming the decision of the Ohio Civil Rights Commission is affirmed.

Judgment affirmed.

WHITMORE, P.J., and MOORE, J., concur.