[Cite as *In re T.J.*, 2018-Ohio-5189.]

**IN THE COURT OF APPEALS**

**ELEVENTH APPELLATE DISTRICT**

**ASHTABULA COUNTY, OHIO**

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| T.J., DEPENDENT AND NEGLECTED CHILD | : | **CASE NO. 2018-A-0064** |

Appeal from the Ashtabula County Court of Common Pleas, Juvenile Division, Case No. 2017 JC 00145.

Judgment: Affirmed.

*Margaret A. Draper*, Assistant Prosecutor, ACCSB, 3914 C. Court, Ashtabula, OH 44004 and *Nicholas A. Iarocci*, Ashtabula County Prosecutor, Ashtabula County Courthouse, 25 West Jefferson Street, Jefferson, OH 44047 (For Ashtabula County Children Services Board).

*Phillip L. Heasley*, Ashtabula County Public Defender, Inc., 4817 State Road, Suite 202, Ashtabula, OH 44004 (For Robin Perkins)

*Michelle M. French*, Law Offices of Michelle M. French, LLC, 28 West Jefferson Street, Jefferson, OH 44047 (Guardian ad litem).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, Robin Perkins, appeals termination of her parental rights to her biological daughter, T.J., born August 3, 2003. T.J. has severe autism, limited communication skills, and is prone to aggressive behavior when confused or she does not get her way.

{¶2} Temporary custody of T.J., along with three of her brothers, was awarded to appellee, Ashtabula County Children Services Board, in November 2014. Ultimately, appellant satisfied multiple case plan requirements and custody of her three sons was restored to her.

{¶3} When removed from appellant's custody, T.J. had poor hygiene, refused to wear clothes, and crawled on the floor and made sounds like an animal. After a few months in foster care, she was admitted to a treatment center for autistic children in Shaker Heights, Ohio. Over the following two years, T.J. resided in a highly structured environment in which she was supervised 24 hours each day. As a result, her aggressive behavior decreased, her ability to groom herself improved, she was able to prepare simple meals and could speak or repeat several words. She also learned to communicate using an iPad containing icons for basic words.

{¶4} After appellant hosted several successful weekend visits at her apartment, custody of T.J. was restored to her in June 2017, with appellee retaining protective supervision. Although appellant had a loving relationship with T.J., the child's behavior regressed over the next two months. Furthermore, appellant told a caseworker that she was having difficulty taking care of T.J. while keeping up with her other obligations.

{¶5} On July 17, 2017, T.J. threw a small knife at appellant, slightly nicking her. Although appellant was not seriously injured, she called 9-1-1, and the police took T.J. to a hospital for psychiatric evaluation. Appellant also immediately called the autism treatment center to see if T.J. could be readmitted. After a two-week wait, T.J. returned to the facility on a full-time basis.

{¶6} One day after readmission, appellee filed for permanent custody of T.J. After this complaint was amended, a court magistrate held an evidentiary hearing on

November 6, 2017. Two days later, the magistrate issued a decision recommending that permanent custody be denied because appellee failed to establish that it had custody of T.J. for at least twelve months of a consecutive twenty-two-month period.

{¶7} Appellee filed objections and moved to reopen its case and submit additional evidence on the "twelve/twenty-two-month" issue. At a separate hearing on January 3, 2018, the trial court granted the motion to reopen and took judicial notice of the record in the 2014 custody action appellee filed against appellant when T.J. was originally removed from her home. The court further informed the parties that it would issue final judgment on the permanent custody complaint based upon the record from the prior action and the evidence the magistrate heard on T.J.'s "best interests."

{¶8} In its July 10, 2018 judgment, the trial court terminated appellant's parental rights and granted permanent custody of T.J. to appellee finding that T.J. had been in appellee's temporary custody for eighteen months of a twenty-two month period and that it was in T.J.'s best interests.

{¶9} In challenging this judgment, appellant assigns the following as error:

{¶10} "The trial court erred by finding that termination of parental rights of the subject child, and granting permanent custody to Ashtabula County Children Services, were in the subject child's best interests."

{¶11} "Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned, orphaned, has been in the temporary custody of the agency for at least 12 months of the prior 22 months, * * * that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E)[,

3

or that the child or another child of the parent has previously been adjudicated abused, neglected, or dependent on three separate occasions]; and (2) the grant of permanent custody to the agency is in the best interests of the child, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2) * * *." *In re A.W.*, 9th Dist. Lorain No. 09CA009631, 2010-Ohio-817, ¶9.

{¶12} "'Clear and convincing evidence is more than a mere preponderance of the evidence. Instead, it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.' *In re Aiken*, 11th Dist. Lake No. 2005-L-094, 2005-Ohio-6146, ¶28." *In re M.G.*, 11th Dist. Geauga No. 2013-G-3162, 2014-Ohio-974, ¶12.

{¶13} Appellant's sole challenge is that termination of parental rights is not in T.J.'s best interests because T.J.'s need for secure placement could have been alternatively achieved.

{¶14} When a public children services agency files a complaint for permanent custody, the role of the juvenile court is limited to deciding the merits of that request. It lacks the authority to order an alternative disposition not requested by the agency. *In re P.S.*, 10th Dist. Franklin Nos 08AP-1023 and 08AP-1024, 2009-Ohio-1545, ¶14.

{¶15} Appellant generally argues before this court and the trial court that there is an alternative to keeping T.J. in the treatment center while not terminating her parental rights. *See* R.C. 2151.4141(D)(1)(d). However, she cites no law demonstrating what the available alternative is. To this extent, she has not carried her burden of demonstrating error. *Proctor v. Ohio Civ. Rights Comm.*, 169 Ohio App.3d 527, 2006-Ohio-6007, 863 N.E.2d 1069, ¶16 (9th Dist.2006). An appellate court has no duty to develop an argument for the appellant, even if one can be made. *Id.*

4

**{¶16}** More importantly, though, there is ample evidence supporting the trial court's best interests conclusion. In addition to providing that all relevant factors must be considered in making the "best interests" determination, R.C. 2151.414(D)(1) sets forth factors for review:

**{¶17}** "(a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers, and out-of-home providers, and any other person who may significantly affect the child;

**{¶18}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶19}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, * * *;

**{¶20}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency * * *."

**{¶21}** As to factor (a), the trial court found that appellant did not visit T.J. for three months after she was admitted into the treatment center the second time, and that she has not shown a true commitment to meet T.J.'s special autistic needs. As to factor (b), the trial court found that the guardian ad litem recommended on T.J.'s behalf that permanent custody be granted to appellee because it is in the child's best interests. As to factor (c), the court found T.J. has been in appellee's temporary custody for more than twelve months of a consecutive twenty-two-month period. As to factor (d), the court found that T.J. needs a legally secure permanent placement, and such a placement cannot be

5

achieved without awarding permanent custody to appellee.

{¶22} All of these findings are supported by clear and convincing evidence. Taken as a whole, when T.J. was initially placed into the autism treatment center, she was prone to aggressive behavior, had poor hygiene skills, and her ability to communicate was extremely limited. During the two years T.J. stayed at the treatment center, these issues improved, and T.J. developed the ability to perform minor tasks by herself.

{¶23} When appellant visited T.J. at the treatment center, she would engage in behavior that was inconsistent with the structured environment T.J. was experiencing as part of her treatment; as a result, T.J. sometimes acted aggressively after the visits. Moreover, after custody of T.J. was returned to appellant in June 2017, T.J.'s behavior digressed in many respects, including her hygiene and ability to communicate. Most significantly, T.J.'s absence from the treatment center caused her aggressive behavior to become more serious, and, upon her return, it took almost two months for the center employees to see improvement in her behavior.

{¶24} As the trial court's best interests determination is supported by clear and convincing evidence, appellant's assignment lacks merit.

{¶25} The judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.

CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.

6