Arnetta L. Sinclair WILLIAMS, Plaintiff–Appellant,

v.

STARK COUNTY BOARD OF COUNTY COMMISSIONERS, et al., Defendants–Appellees.

No. 99–4081.

United States Court of Appeals, Sixth Circuit.

March 23, 2001.

Before BATCHELDER, COLE, and GIBSON,* Circuit Judges.

---

* The Honorable John R. Gibson, United States Court of Appeals for the Eighth Circuit, sitting by designation.

1. We note that the Supreme Court recently held that Congress exceeded its authority under the Fourteenth Amendment in abrogating the States' Eleventh Amendment immunity when it enacted the ADA. *Board of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001). Under Ohio law, however, counties have a distinct legal existence apart from the State such that the Eleventh Amendment does not generally confer immunity against suit. OHIO REV.CODE ANN. § 301.22 (Anderson 1998); *Mumford v. Basinski*, 105 F.3d 264, 267 (6th Cir.1997). Accordingly, *Garrett* has no application to this case.

BATCHELDER, Circuit Judge.

▇ Plaintiff Arnetta Sinclair Williams filed suit against the Stark County Board of County Commissioners ("Board"), Stark County Department of Human Services ("DHS"), and five DHS employees. Count One of the Complaint challenged Plaintiff's termination under the Americans with Disabilities Act ("ADA"); Count Two alleged retaliatory harassment in violation of 42 U.S.C. § 12203. Additional counts presented various claims under state law. With leave of the district court, Plaintiff amended her Complaint to dismiss the individual defendants and DHS from the suit. Following discovery both parties moved for summary judgment. Finding that Plaintiff failed to establish that she was a qualified individual with a disability under the ADA, the district court granted Defendant's motion and denied Plaintiff's. Additionally, the district court found in the alternative that Defendant had not failed to offer Plaintiff reasonable accommodations and that, even if Plaintiff had established all elements of her prima facie case, Defendant had articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, which Plaintiff had failed to rebut. Plaintiff timely filed a Notice of Appeal. On appeal, Plaintiff challenges the district court's decision as to Count One only. We AFFIRM.[1]

## I. STATEMENT OF FACTS

Arnetta Williams has suffered from migraine headaches since childhood. These migraines cause Williams to experience ex-

444

treme dizziness, nausea, sensitivity to light and noise, and pressure in her head. Doctors attribute the migraines to a combination of stress, hypertension, and Williams's menstrual cycle. Even prior to being diagnosed in 1994 by a migraine specialist at the Cleveland Clinic, Williams took medication for her symptoms. After 1994, Williams received nonpharmacologic treatments and continued to take medication. While pregnant with her two children–born in April 1991 and April 1992–she did not experience migraines. Subsequently, however, she suffered migraines of varying intensity and duration two to three times per week. The specialist who treated Williams opined that her symptoms occurred with such severity that by September 1998 she was unable to work when they occurred. Nonetheless, her doctors do not regard this condition as a permanent or total disability.

Williams also suffers from hypertension, which was diagnosed in 1981. This condition was asymptomatic until 1996 when it flared up and required a lengthy time off work. Since then, the hypertension has been asymptomatic and has not limited Williams in any way.

DHS hired Williams in 1988. Beginning as a receptionist, Williams advanced through the agency and held a number of posts. In 1997 when DHS terminated her employment she worked as an eligibility specialist, making determinations of eligibility for welfare and disability benefits. Evaluations of Williams were consistently middling to below average, with an occasional above average review or positive comment on an aspect of her performance. She was also disciplined several times and served two suspensions for poor performance and excessive absenteeism. One review of her handling of a case described her performance as "intolerable" and "disgusting." Williams, nonetheless, maintains that at all times her job performance with DHS was at least adequate and on a par with her co-workers.

In 1996, Williams requested a demotion to a less stressful job to help her health. Williams provided a note from her doctor to confirm her reasons for desiring the demotion, but failed to identify a position sought. Subsequently, however, she unsuccessfully applied for several positions with DHS. In particular, Williams sought a position as a typist, but DHS refused her the appointment because she could not type the requisite words per minute. Williams did not request any accommodation other than the demotion prior to the initiation of this suit. DHS never offered Williams a reduced caseload, an assistant to help with her work, additional paid or unpaid leave, or any other accommodation. The agency did, however, consider Williams capable of performing her work as an eligibility specialist and provided her with additional training and supervision at various points in her career in an effort to help her improve her performance. In August 1997, DHS terminated Plaintiff's employment. A neutral hearing officer affirmed Williams's termination for nonfeasance and inefficiency.

II. ANALYSIS

We review a district court's grant of summary judgment de novo, using the same standard under Rule 56(c) used by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the evidence, all facts, and any inferences that may be drawn

from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). To withstand summary judgment, the non-movant must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First Am. Bank,* 916 F.2d 337, 341–42 (6th Cir. 1990). A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

### A. Employment Discrimination under the ADA

■ To establish a prima facie case of employment discrimination under the ADA, Williams must present evidence which would permit a reasonable jury to find that (1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability; and (5) her position remained open. *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir.1999). The district court held that Williams failed to establish the first element of her prima facie case and so does not come within the protections of the ADA.

■ Before setting forth its provisions on employment discrimination in Title I, the ADA defines several terms that recur throughout the Act. With respect to an individual, "disability" means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Supreme Court has fashioned a three-step approach to reading subsection (A) of this definition.[2] First, the Court considers whether a condition is an impairment; second, it identifies the life activity that the plaintiff relies upon and determines whether it constitutes a major life activity; and third, the Court asks whether the impairment substantially limits the major life activity. *See Bragdon v. Abbott,* 524 U.S. 624, 630–31, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998).

Congress granted the Equal Employment Opportunity Commission ("EEOC") authority to promulgate regulations under Title I of the ADA. *See* 42 U.S.C. § 12116. No agency, however, has authority to issue regulations under the overarching definitions in 42 U.S.C. § 12102. Nonetheless, the EEOC has issued regulations further defining "disability" under § 12102(2). The EEOC includes working as a major life activity, 29 C.F.R. § 1630.2(i), with some reservations about doing so. 29 C.F.R. pt. 1630, App. § 1630.2(j) ("If an individual is substantially limited in any other major life activity, no determination should be made as to whether the individual is substantially limited in working."). Also, the regulations further define "substantially limits" and list three factors for considering whether an impairment substantially limits a major life activity: (1) the impairment's nature and severity; (2) its expected duration; and (3) its permanence or expected long-term effect. 29 C.F.R. § 1630.2(j)(2). When the major life activity implicated is working, "substantial-

---

**2.** Williams brings her claim solely under this    subsection.

ly limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes," not just an "inability to perform a single, particular job." 29 C.F.R. § 1630.2(3)(i).

The Supreme Court recently questioned the authority of the EEOC to issue these regulations and expressed concern about the circularity of including work as a major life activity. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S.Ct. 2139, 2145, 2151, 144 L.Ed.2d 450 (1999). Because the parties have neither raised nor briefed these issues, we assume-without deciding-that the regulations are valid and entitled to deference. Therefore, we begin by assessing Williams's claims in light of *Bragdon's* approach to defining "disability" under the ADA.

### B. Plaintiff's Hypertension

■ First, we determine whether hypertension is an impairment. At the outset, it is worth noting that whether a person has a disability under the ADA is an individualized inquiry. *Sutton*, 119 S.Ct. at 2147. Plaintiff asserts that hypertension is an impairment, and courts have recognized that it can be. *E.g., Oswalt v. Sara Lee Corp.*, 74 F.3d 91, 92 (5th Cir. 1996) (per curiam); *Laird v. Chamber of Commerce for New Orleans & the River Region*, No. 97–2813, 1998 WL 240401, at * 1 (E.D.La. May 12, 1998). Plaintiff experienced a serious episode of hypertension that caused her to miss nearly three months of work. A medical condition of that severity constitutes an impairment.

■ Second, Plaintiff identifies working, walking, seeing, and caring for herself and her children as the activities affected by her hypertension. Assuming the validity of the EEOC regulations, there is no question that working, walking, seeing, or caring for oneself are major life activities under the ADA. 29 C.F.R. § 1630.2(i) (de-

fining "major life activity" to include caring for oneself, walking, seeing, and working). In *Bragdon,* the Supreme Court noted that "major" denotes comparative importance and identified the significance of an activity as the touchstone for inclusion within the statutory definition of "major life activity." *Bragdon,* 524 U.S. at 638. Under this standard, setting aside the circularity problem of including work within the definition, the activities affected by Plaintiff's hypertension also constitute "major life activities" because of their significance in the human experience.

■ Finally, we ask whether Plaintiff's hypertension substantially limits any of these major life activities. There is no question that hypertension serious enough to cause Williams to miss nearly three months of work "limits" the activities she has identified in the everyday sense of the word-perhaps even substantially. There is no dispute, however, that since this episode Plaintiff has controlled her high blood pressure through medication. The Supreme Court recently held that an impairment that is corrected does not substantially limit a major life activity for purposes of the ADA. *Sutton,* 119 S.Ct. at 2146–47. There, the Court reasoned that the structure of the ADA as a whole obligates consideration of any mitigating measures employed when determining whether an individual is substantially limited in a major life activity. *Id.* Williams presented no evidence that medication has failed to control her hypertension. In fact, she testified at her deposition that hypertension in no way limits her life. *Sutton* compels the conclusion that Plaintiff's hypertension does not substantially limit a major life activity, and, therefore, she is not disabled under the ADA because of her hypertension.

### C. Plaintiff's Migraines

■ First, under the *Bragdon* approach, we determine whether Plaintiff's migraines are an impairment. The parties rely on *Hankins v. The Gap, Inc.*, 84 F.3d 797 (6th Cir.1996), for the proposition that migraines constitute an impairment. The court there, however, never reached the question because the plaintiff had rejected the reasonable accommodations her employer had offered. Therefore, relying on the ADA regulations, the court did not treat the plaintiff as a qualified individual with a disability. *Id.* at 802. Other courts have recognized, however, that under the right circumstances an individual's migraines can constitute an impairment. *E.g., Hendry v. GTE North, Inc.*, 896 F.Supp. 816, 824 (N.D.Ind.1995); *Dutton v. Johnson County Bd. of County Comm'rs*, 859 F.Supp. 498, 506 (D.Kan.1994). Since migraines can be particularly disabling, this recognition is correct. The opinion of a migraine expert that Williams is unable to work during a migraine attack establishes her headaches as an impairment.

Second, Plaintiff claims her migraines affect the same activities as her hypertension. For the reasons discussed above, these activities constitute major life activities.

■ Third, we determine whether Williams's migraines substantially limit a major life activity. The Supreme Court has explained the statutory meaning of the phrase "substantially limits." "When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs." *Sutton*, 119 S.Ct. at 2151. Similarly, as outlined above, the EEOC uses a specialized definition of the term when the major life activity at issue is working-though this regulatory refinement may not, as discussed, be entitled to deference. The EEOC defines "substantially limits" to mean "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes," not just an "inability to perform a single, particular job." 29 C.F.R. § 1630.2(3)(i). With respect to Plaintiff's claim to be substantially limited in her major life activity of work, then, Williams must show that her migraines render her unable to work in a broad class of jobs. Her doctor's opinion that she was unable to work certainly supports such a claim. Williams herself, however, requested a demotion, not long-term or indefinite leave, and asserts that she could perform the other jobs for which she applied. Plaintiff's desire for a demotion undermines her physician's opinion and suggests that she could perform certain jobs-just not the particular job from which DHS terminated her. At most, Williams has shown that her condition made it difficult for her to perform her particular job. Because she has failed to allege or provide evidence that she was disqualified by her claimed disability from a broad class of jobs, Plaintiff has not shown that she is substantially limited in the major life activity of working.

With respect to the other major life activities, the EEOC regulations, again of undetermined authority, identify three factors for considering whether an impairment substantially limits a major life activity: (1) the impairment's nature and severity; (2) its expected duration; and (3) its permanence or expected long-term effect. 29 C.F.R. § 1630.2(j)(2). The medical opinions in the record do not regard Plaintiff's migraines as a permanent condition or one causing significant functional impairment. Therefore, the factors identified in the regulations weigh against a finding that Plaintiff's migraines substantially limit her in the major life activities of walking, seeing, and caring for herself and her children.

### III.  CONCLUSION

Because Williams has failed to present evidence that either her hypertension or her migraine headaches substantially limit any of her major life activities, she has failed to demonstrate that she is disabled under the ADA. Summary judgment for the Defendant was therefore proper, and we need not reach the district court's alternative holdings that Defendant had not failed to offer Plaintiff reasonable accommodations and that Defendant had articulated a legitimate, nondiscriminatory justification for terminating Williams.

For the foregoing reasons, we AFFIRM the judgment of the district court.