RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 11a0075p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

JESSICA WHITFIELD,

     *Plaintiff-Appellant,*

     *v.*

No. 09-6488

STATE OF TENNESSEE; TENNESSEE
DEPARTMENT OF MENTAL HEALTH &
DEVELOPMENTAL DISABILITIES; VIRGINIA
TROTTER BETTS, Commissioner, Tennessee
Department of Mental Health &
Developmental Disabilities,

     *Defendants-Appellees.*

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 08-01010—Robert L. Echols, District Judge.

Argued: January 18, 2011

Decided and Filed: March 25, 2011

Before: BOGGS, SUHRHEINRICH, and STRANCH, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Michelle Blaylock Owens, AGEE, VAN ATTA & OWENS, LLC,
Nashville, Tennessee, for Appellant. Michael K. Markham, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.
**ON BRIEF:** Michelle Blaylock Owens, Lynn Agee, AGEE, VAN ATTA & OWENS,
LLC, Nashville, Tennessee, for Appellant. Michael K. Markham, OFFICE OF THE
TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

     BOGGS, J., delivered the opinion of the court, in which SUHRHEINRICH and
STRANCH, JJ., joined. STRANCH, J. (pp. 14–18), delivered a separate concurring
opinion.

1

——————————

**OPINION**

——————————

BOGGS, Circuit Judge.  Jessica Whitfield is blind in one eye and has cerebral palsy.  She began working as an administrative secretary with the Tennessee Department of Mental Health and Developmental Disabilities ("DMHDD") on September 4, 2007.  She was fired less than six months later and subsequently brought this action alleging unlawful employment discrimination under the Americans with Disabilities Act ("ADA").  The district court granted summary judgment for Defendants, and we affirm.

I

Whitfield began working for the State of Tennessee in 1998 as a telephone operator with the Department of Finance and Administration ("DFA").  As a telephone operator, Whitfield answered calls, looked up information in a computer, wrote letters and emails, and updated a directory.  Eventually, she was promoted to the position of telephone operator II, which included supervisory duties such as training other telephone operators.  Other responsibilities of telephone operator II included drafting business letters.  The DFA accommodated her disabilities by providing her with a large computer monitor and a special one-handed keyboard, and Whitfield consistently earned favorable evaluation ratings.  While still employed at DFA, Whitfield applied for multiple positions with the state of Tennesseee.  She was eventually offered and—although she could have stayed at DFA—accepted a new position at DMHDD, a different state agency.

On September 4, 2007, Whitfield began her new position at DMHDD.  This position commenced with a six-month probationary period, during which DMHDD could fire Whitfield for almost any reason.  At DMHDD, Whitfield worked for Ann Turner Brooks, and her responsibilities were to answer the phone and direct phone calls, make file folders, copy and file applications and forms, input complaints into a computer system, prepare mailings, and handle documents for fire marshal inspections.  Before

Whitfield took the job, she explained that she could not type quickly, and Brooks promised that another secretary would do "a good part of the typing." Brooks, a cancer patient, had a mobility disability of her own and took steps to provide Whitfield with various accommodations. Before Whitfield's start date, Brooks requested for her a special left-handed keyboard and a larger computer monitor. And although Whitfield did not request it, Brooks had a printer/scanner placed at Whitfield's desk to accommodate her difficulties walking, transporting documents, and standing.

Unfortunately, these accommodations did not work for Whitfield. Although she had a large monitor and a special keyboard, the same accommodations that had served her well at DFA, the office circumstances were different at DMHDD. Whitfield needed the monitor and keyboard to be directly in front of her, but because of her L-shaped cubicle and the depth of her large monitor at DMHDD, both were off to the side. A co-worker moved the monitor for her, but it was not enough to help. And, although her co-workers received new, smaller flat-panel monitors that could be appropriately positioned, the IT staff determined that Whitfield's special keyboard could not work with the new monitors, so she was stuck with her bulky, poorly-positioned monitor. In late January, Whitfield requested an ergonomic evaluation of her workspace to determine how her situation could be improved. Brooks requested that Whitfield draft for her a letter that she could sign and send to the department that could perform the evaluation, and Whitfield did so on January 30, 2008, although Brooks testified that she never received the letter.

Whitfield's work product at DMHDD was plagued with problems. When entering information into the computer, she made serious spelling and grammatical errors. She was told to correct her mistakes and that the information needed to be entered in complete sentences. Whitfield responded in an email: "sorry about my Grammar and English never have done complete sentences very well Thanks[.]" Two employees in charge of the computer program testified that they could recall no other employees who had spelling and punctuation problems with the program. Whitfield also entered the wrong county or no county at all on numerous forms and made serious errors

on mailing labels. Whitfield later testified that she "just wasn't looking that close, you know." Brooks testified that, although the filing system had been poorly organized for some time, it got worse after Whitfield arrived and that files were not being filed alphabetically. Brooks pointed out Whitfield's errors to her and requested that they be corrected. And, although Whitfield knew she had trouble with grammar, she never attended any of the training classes that were offered to her. Over time, Brooks began doing more of Whitfield's work herself as well as assigning it to other staff members.

On February 7, 2008, Whitfield was notified that her employment would be terminated on February 22, which was during the probationary period. Her termination date was later extended to February 27, 2008, still within the probationary period. Whitfield exhausted administrative remedies and, on October 14, 2008, filed a complaint against Defendants in district court, alleging disability discrimination in violation of Titles I and II of the Americans with Disabilities Act ("ADA"). Whitfield's requested relief included monetary damages and reinstatement.

On January 6, 2009, the district court dismissed Whitfield's claim for monetary damages under Title I of the ADA. The court based its decision on *Board of Trustees v. Garrett*, 531 U.S. 356 (2001), in which the Supreme Court held that Title I did not abrogate states' sovereign immunity from suits for monetary damages. Whitfield conceded this point, but maintained that she could pursue damages under Title II, which the district court did not address in its order.

On November 16, 2009, the district court granted summary judgment in favor of Defendants. The district court held that Whitfield did not create a genuine issue as to whether Defendants fired her solely because of her disability and, as a result, the court did not decide the issue of whether the Eleventh Amendment precluded an award of monetary damages against the state under Title II of the ADA. Whitfield filed this timely appeal, arguing that the district court erred in granting summary judgment for Defendants. This court has jurisdiction to review the district court's final order. 28 U.S.C. § 1291.

II

A

Because Title I did not abrogate the states' Eleventh Amendment immunity, individuals may not sue states for money damages under Title I. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 374 (2001). However, individuals can seek prospective injunctive relief for Title I violations pursuant to *Ex parte Young*. *Id*. at 374 n.9; *see Ex parte Young*, 209 U.S. 123 (1908). Accordingly, Whitfield's Title I claim survives the Eleventh Amendment only to the extent that it constitutes an *Ex parte Young* action for prospective injunctive relief. *Garrett*, 531 U.S. at 374 n.9. The question, then, is whether Whitfield's Amended Complaint contains such an action.

An *Ex parte Young* action may be commenced only against a state official acting in her official capacity and may "seek [only] prospective relief to end a continuing violation of federal law." *Carten v. Kent State Univ*., 282 F.3d 391, 395 (6th Cir. 2002). The question of whether a complaint contains an *Ex parte Young* action is determined on a claim-by-claim basis. *Ernst v. Rising*, 427 F.3d 351, 368 (6th Cir. 2005) (en banc) ("We consider Eleventh Amendment immunity, as well as any exceptions to it, on a claim-by-claim basis."). Whitfield's Amended Complaint names three entities as defendants: the state of Tennessee, DMHDD, and Virginia Trotter Betts, the commissioner of DMHDD. As relief, Whitfield requests: $50,000 in general and specific damages, including back wages; reinstatement with the state in a like position; $450,000 in punitive and compensatory damages; and attorneys' fees, costs, and interest. Significantly, Whitfield requests reinstatement, which constitutes prospective injunctive relief. *Carten*, 282 F.3d at 395. Further, Whitfield identifies a state official, Virginia Trotter Betts, as a defendant. Although it is not clear that she is suing Betts in her official capacity, Whitfield's amended complaint can be read generously to bring both a distinct Title I claim for injunctive relief against Betts, in her official capacity, and a separate Title II claim for damages against all parties. Defendants also read Whitfield's complaint in this manner. Appellees' Br. at 3 ("Plaintiff then filed an amended complaint . . . seeking injunctive relief under Title I and monetary relief under Title II.").

Accordingly, we hold that Whitfield's complaint contains an *Ex parte Young* action for reinstatement pursuant to Title I of the ADA.

B

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by such entity." 42 U.S.C. § 12132. Significantly, whereas Title I specifically addresses employment, Title II address "public services," and this court has never decided whether Title II applies to employment cases.[1] *See Dean v. City of Bay City, Mich.*, 239 F. App'x 107, 112 (6th Cir. 2007) ("[T]his Court declines to reach the novel issue of whether Title II of the ADA applies to employment cases.").

Although we read Whitfield's complaint to contain a purported Title II claim for damages, Whitfield has waived any such claim. In her Amended Complaint, Whitfield alleges discrimination under 42 U.S.C. § 12131(A)(2), which provides definitions, and § 12132, which prohibits the denial of public services because of an individual's disability. *See generally Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008) (stating the standard as "solely because of [an individual's] disability"). The complaint did not tie any particular allegations to those provisions, and, in her appellate brief, Whitfield makes no mention of either these provisions or Title II in general, let alone the issue of whether Title II could apply to her claims of employment discrimination. Rather, Whitfield argues that she was discriminated against only in the context of Title I. *See* Appellant's Br. at 15–21. Thus, to the extent Whitfield may have made out any claims of Title II violations in her Amended Complaint, we hold that she has waived them here.

Accordingly, we need not decide whether Title II applies to employment discrimination or whether Title II abrogates the states' Eleventh Amendment immunity in the employment-discrimination context. *See generally Popovich v. Cuyahoga Cnty.*

---

[1]Other circuits are divided on this issue. *Compare Zimmerman v. Or. Dep't of Justice*, 170 F.3d 1169, 1184 (9th Cir. 1999) (Title II does not apply to employment), *with Bledsoe v. Palm Beach Cnty. Soil and Water Conservation Dist.*, 133 F.3d 816, 822 (11th Cir. 1998) (Title II does apply to employment).

*Ct. of Common Pleas*, 276 F.3d 808, 811 (6th Cir. 2002) (en banc) (holding that Title II claims rooted in violations of the Equal Protection Clause, but not those rooted in violations of the Due Process Clause, are barred by the Eleventh Amendment).

### III

This court reviews orders granting summary judgment de novo. *Havensure, L.L.C. v. Prudential Ins. Co. of Am.*, 595 F.3d 312, 315 (6th Cir. 2010). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate only where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Accordingly, "[e]ntry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Williams v. Stark Cnty. Bd. of Cnty. Comm'rs*, 7 F. App'x 441, 445 (6th Cir. 2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Title I of the ADA provides that a covered employer "shall [not] discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To make out a *prima facie* case of employment discrimination through indirect evidence under Title I, a plaintiff must show that "1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced." *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 365 (6th Cir. 2007) (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1186 (6th Cir. 1996)).

There has been some confusion in this circuit as to the proper test for establishing a *prima facie* case of employment discrimination under the ADA. Although several cases lay out the elements as above, others—including the district court in this

case—require that a plaintiff show "(1) that he or she is an individual with a disability; 2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discharged solely by reason of the disability."[2] *Mahon v. Crowell*, 295 F.3d 585, 589 (6th Cir. 2002) (citing *Monette*, 90 F.3d at 1178). This three-element test ("*Mahon* formulation") for a *prima facie* case is clearly inconsistent with the five-element test described *supra* ("*Monette* formulation").

*Monette* states the proper test. Under the *McDonnell Douglas* burden-shifting framework, once a plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a non-discriminatory explanation for the employment action, and if the defendant does so, the burden shifts back to the plaintiff to prove that the defendant's explanation is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973); *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 703 (6th Cir. 2008). In this context, the three-element *Mahon* formulation of a *prima facie* case makes little sense, as its third element—whether the employee was, in fact, discharged because of the disability—requires at the *prima facie* stage what the *McDonnell Douglas* burden-shifting framework seeks to uncover only through two additional burden shifts, thereby rendering that framework wholly unnecessary. The five-element *Monette* formulation, on the other hand, properly tracks the formulation for a *prima facie* case used in *McDonnell Douglas* itself. *See McDonnell Douglas*, 411 U.S. at 802. Further, *Monette* is cited for the formulation used in *Mahon*, and although *Monette* includes the three-element language, it is not used in the context of establishing a *prima facie* case for purposes of *McDonnell Douglas*, but is rather in the context of what is required for *recovery* under the ADA. *Monette*, 90 F.3d at 1179. Thus, it appears as though the *Mahon* court misread *Monette*. Because conflicts between published cases are resolved in favor of the earlier case, we adopt *Monette*'s five-element test for a *prima facie* case

---

[2]*Compare Daugherty*, 544 F.3d at 703, *and Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 417 (6th Cir. 2004), *and Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 449 (6th Cir. 1999), *with Spees v. James Marine, Inc.*, 617 F.3d 380, 395 (6th Cir. 2010), *and Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008), *and Williams v. London Util. Comm'n*, 375 F.3d 424, 428 (6th Cir. 2004).

of employment discrimination under the ADA. *United States v. Allen*, 619 F.3d 518, 524 n.2 (6th Cir. 2010).

Whitfield argues that the district court improperly required that she meet a heightened standard of proof in order to survive Defendants' motion for summary judgment. According to Whitfield, the district court required that Whitfield's evidence be strong enough to overcome Defendants' rebuttal *at trial* in order to survive summary judgment. Appellant's Br. at 21–22. Although the district court cited language from this court's decision in *EEOC v. Avery Dennison Corp.*, 104 F.3d 858 (6th Cir. 1997), for a proposition that the opinion does not support, the district court nonetheless used the appropriate standard of proof in concluding that Defendants were entitled to summary judgment.

At the end of its opinion, the district court quoted *Avery* for the proposition that "[t]he amount of evidence Plaintiff must produce to support her *prima facie* case 'is not the same amount necessary to win a judgment.'" (Quoting *Avery*, 104 F.3d at 861). The district court further cited *Avery* for the proposition that "Plaintiff must present a case that allows the inferences drawn in her favor at the *prima facie* stage 'to be of significant force as to overcome the defendant's rebuttal or prove the rebuttal pretext.'" (Quoting *Avery*, 104 F.3d at 861). The *Avery* court, however, was not referring to summary judgment, but rather judgment at trial. 104 F.3d at 861. To survive a motion for summary judgment, the plaintiff need not *prove* that the defendant's proffered rationale is pretextual, as that would be enough proof for summary judgment in favor of the plaintiff. Rather, the plaintiff must prove only enough to create a *genuine issue* as to whether the rationale is pretextual. *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 532 (6th Cir. 2007); *Tysinger v. Police Dept. of City of Zanesville*, 463 F.3d 569, 576–77 (6th Cir. 2006).

At oral argument, Whitfield argued the opposite extreme: that an ADA plaintiff need not produce *any* evidence of pretext to survive a defendant's motion for summary judgment. In Whitfield's view, she need only create a genuine issue of material fact as to the existence of a *prima facie* case in order to defeat a motion for summary judgment

and proceed to trial. This is wrong. Because, under the *McDonnell Douglas* framework, an ADA plaintiff bears the burden at trial of proving that the defendant's proffered explanation is pretextual, the plaintiff must be able to show a genuine issue of material fact as to that issue at the summary judgment stage. *Celotex Corp.*, 477 U.S. at 322 ("Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to . . . establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Whitfield cited this court's decision in *Jones v. Potter* as support for her contrary contention, but that case simply provides her no support. *See* 488 F.3d 397 (6th Cir. 2007). It is puzzling that Whitfield leaned so heavily on *Jones*—a case she did not cite in her brief—because it directly refutes her argument. Indeed, the *Jones* court affirmed a district court's grant of summary judgment in favor of the defendants where the plaintiff made out a *prima facie* case but failed to establish a genuine issue of material fact as to pretext. *Id*. at 402, 409–10.

Notwithstanding its discussion of *Avery*, it is clear that the district court used the correct standard, which is whether Whitfield had created a genuine issue of material fact as to *both* her *prima facie* case *and* pretext. The district court noted that "[o]ther than the evidence . . . relating to Plaintiff's *prima facie* case, Plaintiff has not produced sufficient other evidence to show that Defendant's reason for terminating her employment" was pretextual. The court concluded, after the *Avery* discussion, that "Plaintiff has not created a *genuine issue of material fact* that her employment was terminated *solely* because of disability discrimination against her." (Emphasis supplied). Accordingly, despite its misplaced reliance on *Avery* and misstatement of the *prima facie* test, the district court's conclusion rested on an application of the proper standard of proof for summary judgment.

Whitfield next argues that the district court erroneously required that she show that she was discriminated against *solely* because of her disability. The district court cited this court's decision in *Talley v. Family Dollar Stores*, 542 F.3d 1099, 1105 (6th Cir. 2009), for this requirement, and although Whitfield acknowledges that the district court followed Sixth Circuit precedent, she argues that this circuit's precedent is

incorrect. Appellant's Br. at 23–24. However, just as the district court was bound by prior decisions of this court, so too are we. *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 454 (6th Cir. 2004) (holding that the "sole reason" test "remain[s] good law in this circuit, and we are bound by this authority"); *Salmi v. Sec'y of Health and Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985). Further, because Whitfield demonstrates no genuine issue of material fact as to *any* disability discrimination, whether or not she must show that her termination was *solely* due to disability discrimination can have no bearing on the outcome of this case.

Because the district court used the incorrect *Mahon* formulation of a *prima facie* case, it observed that the third element, whether the adverse employment action was solely because of Whitfield's disability, "dovetails into Defendants' proffered legitimate, non-discriminatory reason for terminating Plaintiff's employment."[3] Because the district court found no genuine issue of material fact as to Defendants' proffered rationale, it concluded that Whitfield failed to establish a *prima facie* case under the *Mahon* test, but neither the district court nor the parties addressed the *Monette* test, which contains unique elements such as "the position remained open." There is no decision below, then, on whether Whitfield has made out a *prima facie* case of employment discrimination under the correct framework.

Assuming, *arguendo*, that Whitfield has made out a *prima facie* claim under the *Monette* test, summary judgment in favor of Defendants is proper because there is no genuine issue of material fact as to whether Whitfield's termination was due to her poor performance. There is overwhelming evidence that Whitfield did a poor job. Although some of her performance problems can be attributed to her disability and Defendants' failure to implement successful accommodations, many of Whitfield's performance problems were completely unrelated to her disabilities.

---

[3]That observation was a logical one because, as explained *supra*, the three-factor *Mahon* test more aptly describes what is required to win a judgment, not to make out a *prima facie* case under the *McDonnell Douglas* framework. Accordingly, it is little wonder that the third element overlaps with both burden shifts pursuant to *McDonnell Douglas*.

Although Whitfield attributes her spelling errors to a lack of spell check in the computer program used to input complaints, she made serious spelling and grammatical errors even in programs that had a spell-check feature. In December 2007, nearly three months into her employment, Whitfield neglected to enter the required county on numerous inspection forms and, on another form, entered the wrong county. And although she had difficulties using her computer due to her disability, she also made errors in assignments that were not performed on a computer, such as organizing files alphabetically. On other occasions, she mailed letters without zip codes or complete addresses. Many of Whitfield's errors can be attributed to nothing more than Whitfield's lack of attention to detail, and Whitfield admitted as much in her deposition, stating that she "just wasn't looking that close" when addressing mailings. At bottom, Whitfield routinely made serious errors that were unrelated to her disability or to a lack of accommodations.

In this context, Whitfield must do more than point to the facts that Defendants knew she was disabled and failed to provide all of her requested accommodations. Although these facts may help Whitfield establish her *prima facie* case of discrimination under the ADA, in order to survive Defendants' motion for summary judgment, she needs to show that Defendants' explanation for her termination could be deemed pretextual. Whitfield focuses only on the problems she had entering complaints into the computer, arguing that, if she had been given all the accommodations she requested, she would have not had the same problems, and, further, other employees made similar errors or were not required to enter complaints at all. Appellant's Br. at 18–21. Although Whitfield succeeds in creating a genuine issue as to whether she could have adequately performed *that particular function* with the proper accommodations, she does not address the serious errors she routinely made while performing tasks that were not at all impacted by her disabilities, such as confirming that an envelope has a zip code before dropping it in the mail. Because Whitfield does not create a genuine issue of material fact as to whether she was fired due to her disability, summary judgment in Defendants' favor was proper.

IV

For the foregoing reasons, we AFFIRM the decision of the district court.

---------------------

**CONCURRENCE**

---------------------

JANE B. STRANCH, Circuit Judge, concurring.  I concur with the lead opinion in this case.  However,  I write separately to urge the *en banc* court to avail itself of the next opportunity to reexamine our decisions imposing a "sole reason" standard on the Americans with Disabilities Act ("ADA").

Following enactment of the ADA in 1990, courts grappled with how to articulate the standards applicable to ADA litigation.  Lacking precedent and finding a number of cases alleging claims under the ADA  and the Rehabilitation Act of 1973 ("RA"), courts turned to the RA for guidance in interpreting the ADA.  Such was the case in *Maddox v. University of Tennessee*, where the district court conducted a thorough analysis of the claim under the RA, then summarily concluded that the same analysis and outcome applied to the ADA claim.  907 F. Supp. 1144, 1152 (E.D. Tenn. 1994) ("What the court has stated above [about the Rehabilitation Act claim] requires it to conclude as a matter of law that  the plaintiff has not shown that he was subjected to discrimination because of his disability, and that the defendants are therefore entitled to summary judgment [as to the ADA claim as well].").

On appeal, a panel of this Court adopted the district court's analogous treatment of the two claims in an equally conclusory manner. *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 846 n.2 (6th Cir. 1995) ("The ADA parallels the protection of the Rehabilitation Act . . . .  The district court held that its reasoning with respect to the Rehabilitation Act claim applied with equal force to the ADA claim. We agree and will therefore review the respective claims accordingly.") (omission from original).  Thus, with absolutely no discussion of the textual or historical distinctions between the two acts, this Circuit imposed the RA standard, including the sole motivation test, on the ADA.  In *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1177-78 (6th Cir. 1996), the Court, relying on *Maddox*, analyzed plaintiff's ADA claim under the three-prong RA standard, thus entrenching the sole motivation test in this Circuit's ADA precedence.

I believe a more complete analysis of the two acts dictates a contrary result. First, the problem with the analogy presumed by *Maddox* and *Monette* is that the texts of the respective statutes differ in a key respect. While the RA prohibits discrimination against an individual "solely by reason of his or her disability," 29 U.S.C. § 794(a), the ADA prohibits discrimination "on the basis of" the individual's disability, 42 U.S.C. § 12112(a).[1] While the text of the RA mandates the sole motivation standard, no derivation of the word "sole" appears in any liability provision of the ADA.

Second, it appears that Congress intended this key language difference. Early legislative history suggests that Congress perceived the RA as not wholly sufficient to protect the interests of disabled individuals in the workforce. *See, e.g.*, 96 Cong. Rec. 1389 (daily ed. Mar. 28, 1979) (statement of Rep. Moakley) ("Some steps have been taken to eliminate employment discrimination of the handicapped[, including passage of the Rehabilitation Act and legislation at the state level.] However, this is not enough."). Later history indicates that Congress viewed the ADA as analogous to the primary law governing employment discrimination, Title VII, and intended claims of disability discrimination under the ADA and Title VII to be treated comparably:

> And they should be parallel. The remedies for victims of discrimination because of disability should be the same as the remedies for victims of race, color, religion, sex, and national origin discrimination. . . . The remedies should remain the same, for minorities, for women, and for persons with disabilities. No more. No less.

101 Cong. Rec. 2599, 2615 (daily ed. May 22, 1990) (statement of Rep. Edwards). The exemplar to which the ADA is to conform plainly states, " . . . an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a *motivating factor* for any employment practice,

---

[1]At the time of the *Monette* decision, the relevant section of the ADA read: "No covered entity shall discriminate against a qualified individual with a disability *because of the disability* of such individual in regard to . . . ." 42 U.S.C. § 12112(a) (emphasis added). However, the current version of § 12112(a) reads: "No covered entity shall discriminate against a qualified individual *on the basis of disability* in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* (emphasis added).

even though other factors also motivated the practice."   42 U.S.C. § 2000e-2(m) (emphasis added).

Congress amended the ADA in 2008 to replace the "because of" language with "on the basis of" language.  ADA Amendments Act of 2008, Pub. L. No. 110-325, 112 Stat. 3553.  In doing so, Congress again stated its purpose:

> Aligning the construction of the Americans with Disabilities Act with Title VII of the Civil Rights Act of 1964, the bill amends Title I of the ADA to provide that no covered entity shall discriminate against a qualified individual "on the basis of disability."

154 Cong. Rec. S8342, 8344 (daily ed. Sept. 11, 2008) (statement of Sen. Harkin) (quote taken from the Statement of Managers to Accompany S. 3406 as read into the Record). Specifically as to the insertion of the "on the basis of" language, Congress stated that "[t]he bill amends Section 102 of the ADA to mirror the structure of nondiscrimination protection provision in Title VII of the Civil Rights Act of 1964." *Id.* at 8347.

The text of Title I of the ADA also bears evidence of this congressional intent. ADA § 12117, entitled "Enforcement," provides that the "powers, remedies, and procedures" set forth in specifically listed sections of Title VII "shall be the powers, remedies, and procedures this title provides to . . . any person alleging discrimination on the basis of disability . . . ." 42 U.S.C. § 12117(a).  Those enumerated sections include Title VII's "Enforcement Provisions" set out in  § 2000e-5, a remedies provision which references the "motivating factor" standard. 42 U.S.C. § 2000e-5(g)(2)(B).  Thus, the ADA's remedies provision incorporates the "motivating factor" standard of Title VII. *Cf. Baird v. Rose*, 192 F.3d 462, 470 (4th Cir. 1999) (noting the incorporation of Title VII remedies in Title II of the ADA and compiling cases).

It appears to me that we have failed to heed statutory and congressional instruction.  Under current Sixth Circuit precedent, a distinction exists that lacks support in statutory language - a distinction that results in lesser protection of disabled employees under the ADA than that afforded to employees covered by Title VII.  In the Sixth Circuit, ADA plaintiffs must prove their disability was the "sole" reason for their

employers' actions.  Case law indicates every other circuit that has addressed the issue, save one,[2] has held an employee may recover under the ADA if the employee's disability was a "motivating factor" in the adverse action.  Those circuits have adopted an analytical approach akin to that under Title VII, as envisioned by legislative history and incorporated in statutory language.  We have not.

*Monette* is well-established in this Circuit, but our initial, presumably unintentional, misstep is not without its critics.  Panels have begrudgingly recited the "sole" standard in ADA employment discrimination cases as required by 6th Cir. R. 206(c).  *See, e.g.*, *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 454 (6th Cir. 2004) ("While it is true . . .that some of our sister circuits have held that an ADA plaintiff need not demonstrate that disability was the sole reason for the adverse employment action . . . , *Monette* and *Walsh* remain good law in this circuit, and we are bound by this authority."); *Macy v. Hopkins Cty Sch. Bd. of Educ.*, 484 F.3d 357, 363-64 & n.2 (6th Cir. 2007) ("We are, of course, currently bound by *Monette* and *Hedrick*, . . . whether the reasoning set forth in those opinions was correct or not."); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007) ("[U]nlike 'every other circuit save one,' the Sixth Circuit continues to subject claims brought under either the ADA or the Rehabilitation Act to the same substantive standard despite the linguistic differences between the two acts." (quoting *Macy*)); *Everson v. Leis*, No. 09-4355, 2011 U.S. App. LEXIS 2706, at n.7 & *43 (6th Cir. Feb. 10, 2011) (Moore, J., dissenting) ("Because our 'solely because of' standard is in tension with the majority of circuits, I believe that our en banc court should consider the continued validity of our decisions applying this standard in an appropriate case.").

I take this opportunity to lend my voice to the others that have urged the *en banc* court to reconsider our initial importation of the sole motivation standard from the RA into the ADA.  I do not find our position justifiable in light of the tenets of statutory construction.  This case is appropriately decided under either standard; however, future

---

[2]The 10th Circuit, in *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005), also adopted the "sole reason" test for the same reason the 6th Circuit adopted it in *Monette.*

cases will carry this Circuit further into an analysis that we already question and one at variance with the majority of other circuits.**3**    At the next opportunity, I urge reconsideration of this Circuit's ADA standard by the *en banc* court.

---

**3**It appears that eight circuits have refused to read the sole reason standard into any title of the ADA. *See, e.g.*, *Head v. Glacier Northwest, Inc.*, 413 F.3d 1053, 1065 (9th Cir. 2005) ("Thus, on the basis of the plain language of the ADA, and with the support of seven other circuits, we conclude that 'solely' is not the appropriate causal standard under any of the ADA's liability provisions.").