NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0448n.06

No. 12-3094

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*May 03, 2013*

DEBORAH S. HUNT, Clerk

STEPHEN J. BECKER,

    Plaintiff-Appellant,

v.

ELMWOOD LOCAL SCHOOL DISTRICT,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF
OHIO

Before:  KETHLEDGE and WHITE, Circuit Judges; LUDINGTON, District Judge.[*]

PER CURIAM.  Stephen J. Becker, an Ohio citizen, appeals through counsel the summary judgment for Defendant Elmwood Local School District, his former employer, in a case he filed pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq*.; and Ohio law.

Becker was employed by Defendant as a fourth-grade teacher from 2001 to 2009.  He acknowledges suffering from obsessive compulsive disorder and anxiety.  He reported his conditions to his building's new principal, Michelle Tuite, in 2006, although he stated that they did not affect his performance and required no accommodation.

---

[*]The Honorable Thomas L. Ludington, United States District Judge for the Eastern District of Michigan, sitting by designation.

In May 2007, during Becker's lunch period, Tuite called Becker into her office to reprimand him for yelling at students in the hallway. Tuite testified at her deposition that Becker became agitated and repeatedly asked to leave her office. When Becker left the meeting, Tuite followed him and observed that "he was no longer in a rational state of mind." Becker concedes that he left school mid-day, but asserts that he "followed protocol" by asking another teacher to serve as a substitute for his class. Becker testified that he felt that he had to leave school after the reprimand because his anxiety "got high" and "there was no way [he] could function for the remainder of the day." Tuite reported the incident to Steve Pritts, Elmwood's Superintendent, who ordered an informal lockdown of the school, disabled Becker's electronic swipe access card, and asked that the police be dispatched to Becker's house to check on his well being.

Also near the end of the 2006-2007 school year, the school's administration received an e-mail from a school employee and mother of a former student reporting that Becker had been calling her son, now a college student, repeatedly. The school investigated the matter and determined that nothing inappropriate had occurred while the boy was a student at Elmwood. Becker ceased communication with him. However, Becker was placed on paid administrative leave for the remainder of the year while an investigation was pending. That summer, Becker filed disability discrimination charges with the Equal Employment Opportunity Commission (EEOC) and Ohio Civil Rights Commission.

Defendant decided to rehire Becker for the next school year. Becker received mixed performance reviews during the 2007-2008 year, and the school offered him another one-year contract. His first performance review of the 2008-2009 school year was positive, but the second,

conducted in February 2009, was far more negative than any he had previously received. Becker points out that he was reviewed shortly after a fourth-grader had died, when both he and his students were in a grieving period. Tuite conducted three more reviews of Becker's classroom performance. Two were positive and one negative. Becker contends that the one negative review occurred because he was attempting to teach remedial math, a subject he had not taught all year because his specialty was social studies. On March 31, 2009, Tuite informed Becker that she would not recommend that he be rehired for the next school year, when the school would have been required to offer him permanent employment due to his length of service. Becker attempted to grieve this decision, but he ultimately submitted a letter of resignation on April 20, 2009, after being informed that if he did not resign the school board would not renew his contract at its meeting later that day. Becker believed that non-renewal of his contract would greatly reduce any chance of obtaining a position at another school.

After filing a discrimination complaint with the EEOC, Becker filed this lawsuit alleging that Defendant had discriminated against him based on his sex, a perceived disability, and in retaliation for his previous EEOC filings. After conducting discovery, Defendant moved for summary judgment, and Becker responded. The district court granted Defendant's motion. Becker reasserts each of his claims on appeal.

We review de novo the award of summary judgment. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). In this case, because Becker has no direct evidence of discrimination, he must establish a prima facie case of discrimination through indirect evidence, after which Defendant is required to proffer a legitimate, non-discriminatory reason for his termination, which

Becker then has the burden of showing was a pretext for discrimination. *See Whitfield v. Tenn*., 639 F.3d 253, 259 (6th Cir. 2001).

In order to establish a prima facie case of reverse sex discrimination, Becker was required to show that Defendant is the unusual employer who discriminates against men, that he was qualified for his teaching position, that Defendant took an adverse action against him, and that he was treated differently from similarly situated women. *See Simpson v. Vanderbilt Univ*., 359 F. App'x 562, 568-69 (6th Cir. 2009); *Arendale v. City of Memphis*, 519 F.3d 587, 603-04 (6th Cir. 2008). Here we only need to consider whether Becker was treated differently from similarly situated women. The district court found that although Becker argued that his female co-workers received poor evaluations and still had their contracts renewed, none of these co-workers had been accused of harassing former students with telephone calls, or had reacted to criticism so strangely that they were locked out of the building and placed on administrative leave. Becker argues that the district court employed the similarly-situated portion of the prima facie case too narrowly, citing *Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 412 (6th Cir. 2008). However, we conclude that the district court was correct in its analysis and that Becker, therefore, failed to establish a prima facie case of reverse sex discrimination.

In order to establish a prima facie case of retaliation, Becker was required to show that he engaged in protected activity that was known to Defendant, an adverse action was taken against him, and there was a causal connection between the activity and the adverse action. *See Arendale*, 519 F.3d at 606. The district court found that Becker had not established a causal connection between the EEOC charges filed in 2007 and the recommendation not to renew Becker's contract in 2009.

We agree. Becker was given one-year renewals for the school years ending in 2008 and 2009. He has not established any causal connection between his protected activity and Defendant's decision two years later. We therefore agree that Becker did not establish a prima facie case of retaliation.

In order to establish a prima facie case of disability discrimination, Becker was required to show that he was disabled or regarded by his employer as disabled, he was qualified for his position, an adverse action was taken against him, Defendant knew of his disability, and he was replaced. *Whitfield*, 639 F.3d at 259. The district court found that Becker had not established that an adverse action was taken against him, because he submitted a letter of resignation. However, in this circuit, we have found a constructive discharge where a resigning employee reasonably believed his termination was imminent, or where he was given the option of retiring or being laid off. *See Ford v. Gen. Motors Corp.*, 305 F.3d 545, 554 (6th Cir. 2002); *Scott v. Goodyear Tire & Rubber Co.*, 160 F.3d 1121, 1128 (6th Cir. 1998). Here, Pritts testified that he told the union representative that he needed Becker's resignation letter by 3 p.m. on April 20, 2009, or he would be terminated. Multiple witnesses agreed that if his contract was not renewed, Becker would have difficulty obtaining a position at another school. Becker's circumstances go beyond those cases cited above, in that the threat was not just to his current job, but to his career. We therefore find that Becker established an adverse action in the form of a constructive discharge.

The burden therefore shifts to Defendant to offer a legitimate, nondiscriminatory reason for its decision. Here, Defendant argues that it decided against renewing Becker's contract because he was a substandard teacher. In support, the defendant points to four problems that Becker had from 2007 to 2009: the harassing phone calls that Becker made to a former student, the incident where

Becker left the school after the principal criticized him, his mixed performance reviews, and his resistence to suggestions for improvement. Given this problematic history, the defendant declined to renew Becker's contract. "Poor performance is a legitimate non-discriminatory reason for terminating an employee." *Stockman v. Oakcrest Dental Ctr., P.C.*, 480 F.3d 791, 802 (6th Cir. 2007) (citation omitted).

When an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for the termination is pretextual. *See Blizzard v. Marion Technical College*, 698 F.3d 275, 284 (6th Cir. 2012). Thus, Becker has the burden to produce sufficient evidence from which a jury could reasonably reject Elmwood's explanation of why it constructively discharged him. *Id.* (citing *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (internal quotation marks and brackets removed)).

As to pretext, Becker makes three arguments. First, he points to Defendant's decision to "departmentalize" the fourth grade for the 2008–2009 school year, which resulted in Becker teaching one subject (social studies) rather than multiple subjects. Becker's burden is to establish that Defendant's *proffered* reason is pretextual. Defendant did not identify its decision to departmentalize the fourth grade as part of its legitimate, nondiscriminatory reason for not renewing Becker's contract. Becker contends that, at the time, Defendant stated that it needed to departmentalize the fourth grade because new teachers were only certified to teach two subjects, but that Defendant later claimed that it made that decision "[s]o that Mr. Becker's less-than-satisfactory techniques and tones would affect fewer students and play to his strength[.]" Becker notes that the fourth grade remained departmentalized after his resignation, undermining Defendant's later

explanation. Assuming that Defendant's explanation for departmentalizing changed from benign to maligning Becker's teaching ability, the fact remains that Becker failed to provide sufficient evidence of pretext with respect to Defendant's proffered reasons for not renewing his contract.

Second, Becker argues that his performance reviews are evidence of pretext. He contends that Defendant set him up for negative evaluations by observing him at inopportune times. For example, one of Becker's evaluations occurred one week after a fourth-grade student had died, and another occurred when Becker was teaching math, a subject he had not taught all year. Becker also contends that his other evaluations show "a continuing pattern of improvement." But these reviews are not as positive as Becker asserts. Becker's evaluation in October 2007 was fairly poor, and his reviews in February 2008 and November 2008 both included criticisms. Even if we discount the two reviews that Becker contends were set-ups, the evaluations are still mixed at best. And they are certainly not positive enough to erase Becker's troubled history at the school. So these reviews do not demonstrate that the reason for Defendant's decision to not rehire Becker was pretextual.

Finally, Becker argues that Defendant "never made it completely clear" that the problems that occurred in the spring of 2007 were part of its legitimate, nondiscriminatory reason for not renewing his contract. Thus, he says, we should not consider them. But Defendant specifically relied on those problems and concerns about Becker's professionalism in both its motion for summary judgment and its brief here. So this argument is meritless.

The district court's judgment is affirmed.